# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| IFC CREDIT CORPORATION | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 09 B 27094 |
| | ) | |
| | ) | Hon. Jacqueline P. Cox |
| IFC CREDIT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. |
| FIRST CHICAGO BANK AND TRUST; | ) | |
| | ) | |
| COACTIVE CAPITAL PARTNERS, INC; | ) | |
| | ) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY; | ) | |
| | ) | |
| GREENWICH INSURANCE COMPANY; | ) | |
| | ) | |
| RUDOLPH D. TREBELS; LEE TREBELS; MARC LANGS, | ) | |
| | ) | |
| JAMES W. KILEY; and JAMES F. WHITE | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED ADVERSARY COMPLAINT OF THE TRUSTEE
FOR DECLARATORY AND INJUNCTIVE RELIEF**

David P. Leibowitz, as Chapter 7 Trustee (the "Trustee") for the Estate of IFC Credit Corporation ("IFC" or the "Debtor") pursuant to 11 U.S.C. §§ 105(a), 28 U.S.C. §§ 2201, Federal Rules of Bankruptcy Procedure 7001(1), (2), (7) and (9), and 7065 for his Verified Adversary Complaint For Declaratory And Injunctive Relief against First Chicago Bank And Trust ("First Chicago"), CoActiv Capital Partners, Inc. ("CoActiv"); Manufacturers and Traders Trust Company, successor by merger to Court Square Leasing Corp. ("M&T"); Greenwich

{7198 CMP A0241559.DOC 2}

Insurance Company ("Greenwich"), Rudolph ("Rudy") D. Trebels, Marc Langs, Lee Trebels, James W. Kiley and James F. White states as follows:

### Summary of Relief Requested

The Trustee seeks injunctive relief to stay litigation currently pending in Illinois state court and in the Eastern District of Pennsylvania against IFC's former officers and directors. These officers and directors have requested the reimbursement of legal defense expenses through IFC's directors' and officers' ("D&O") insurance policy and the insurer has moved this Court for authorization to advance payment for those expenses. The D&O insurance proceeds paid toward legal defense expenses, however, are charged against the aggregate liability limits of IFC's D&O policy, and would deplete and (perhaps) completely exhaust the D&O insurance proceeds before a single penny is paid to any potential judgment creditor. The Trustee seeks to stay the litigation and any payments towards the directors and officers legal defense expenses in order to stop the clock, gather up all property and claims relating to Debtor's estate and evaluate the various claims, in order to affect an orderly administration and distribution of all estate property.

### Parties

1. IFC, one of the top 100 leasing companies in the United States, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) (the "Bankruptcy Code") and the Office of the United States Trustee appointed David P. Leibowitz as Chapter 7 Trustee for the Debtor's Estate on July 27, 2009 (the "Petition Date" or "Date of Appointment").

{7198 CMP A0241559.DOC 2}

2

2. After the Date of Appointment, the Court granted the Trustee's request to operate the Debtor's business under § 721 of the Bankruptcy Code on August 14, 2009 (the "§ 721 Order"). (Docket No. 107.)

3. First Chicago is a corporation organized and existing under the laws of Illinois with its principal place of business in Itasca, Illinois. First Chicago is the named plaintiff in two actions against IFC or officers and directors of IFC pending in the Circuit Court of Cook County: *First Chicago Bank & Trust v. IFC Credit Corporation*, Case No. 09 CH 22114 and *First Chicago Bank v. Trebels*, Case No. 09 CH 30153.

4. CoActiv is a Delaware corporation with its principal place of business in Horsham, Pennsylvania. CoActive is an intervening plaintiff, with IFC as the named defendant, in *First Chicago Bank & Trust v. IFC Credit Corporation*, Case No. 09 CH 22114.

5. M&T is a New York corporation with its principal place of business in Buffalo, New York and Successor by Merger to Court Square Leasing Corporation, a Pennsylvania corporation.

6. Greenwich is a corporation with its principal place of business in Stamford, Connecticut. Greenwich filed its Motion For Relief From The Automatic Stay, To The Extent Applicable with this Court on September 11, 2009 (Docket No. 193) (the "Greenwich Motion"). The Greenwich Motion requests Court approval and authorization to advance monies for legal defense expenses to certain insured former officers and directors of IFC pursuant to IFC's D&O policy.

7. Rudy Trebels is a resident of Morton Grove, Illinois. He is the former President and Chief Executive Officer of IFC.

8. Marc Langs is a resident of Morton Grove, Illinois. He is the former Chief Financial Officer of IFC.

9. Lee Trebels is a resident of Morton Grove, Illinois. She is the wife of Rudy Trebels.

10. James W. Kiley ("Kiley") is a former director of IFC.

11. James F. White ("White") is a former director of IFC.

## Jurisdiction and Venue

12. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). The filing of the Debtor's chapter 7 petition commenced a bankruptcy case pending before this Court and styled as *In re IFC Credit* Corporation, Case No. 09 B 27094 (the "Case").

13. The claims asserted in this adversary proceeding arise under the Bankruptcy Code, or they arise in or are related to the Case. Accordingly, this Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

14. This adversary proceeding is a core proceeding within the meaning of one or more subsections of 28 U.S.C. § 157(b)(2). In the event that this adversary proceeding is deemed to be a non-core proceeding, the Debtor hereby consents, pursuant to 28 U.S.C. § 157(c)(2), to this Court entering a final order or judgment.

15. Venue of this adversary proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

{7198 CMP A0241559.DOC 2}

**Factual Background**

16.  Article VII of IFC's By-Laws addresses the indemnification of IFC's officers, directors, employees and agents. A copy of IFC's By-Laws are attached hereto as <u>Exhibit A</u> (the "By-Laws"). Article VII of the By-Laws provides in relevant part:

> <u>Civil, Criminal, Administrative, or Investigative Proceedings</u>. The corporation shall have the power to indemnify any person who was or is a party or is threatened to be made a party to any civil, criminal, administrative or investigative proceeding (other than an action by or in the right of the corporation) by reason of the fact that he or she is or was a director, officer, employee or agent of the corporation . . . against expenses (including attorney's fees), judgments fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. . . .

Exh. A., By-Laws, Article VII, Section 7.1; and

> <u>Determination of Indemnification.</u>  Any indemnification under [Article VII] sections 1 and 2 shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he or she has met the applicable standard of conduct set forth in [Article VII] sections 1 and 2. Such determination shall be made (a) by members of the board of directors who were not parties to such action, suit or proceeding, or (b) if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (c) by the shareholders.

Exh. A., By-Laws, Article VII, Section 7.4.

17.  On or about July 20, 2008, Greenwich Insurance Company ("Greenwich") issued a Private Company Insurance Policy No. ELU 106398-08 (the "Policy") to IFC. Subject to the terms and conditions of the Policy, the Policy potentially affords coverage up to a maximum aggregate limit of liability of $5 million (the "Policy Coverage Amount"). A copy of the Policy is attached hereto as <u>Exhibit B</u>.

{7198 CMP A0241559.DOC 2}

18. The D&O coverage part of the Policy potentially provides coverage to IFC under Insuring Agreement I (B)(2) and to Insured Persons[1] under Insuring Agreements I (A) and (B). These Insuring Agreements provide coverage, subject to all of the Policy's terms and conditions, for Loss resulting from a Claim first made against the Company or Insured Persons during the Policy Period for a Wrongful Act. (*See* Ex. B, Policy, D&O Coverage Part, Section I (A) and (B).)

19. Furthermore, the Bankruptcy Court authorized, and the Trustee funded the premium for tail coverage on the Policy pursuant to the Interim Order (I) Authorizing Use Of Cash Collateral And (II) Scheduling And Approving The Form And Method Of Notice Of The Hearing On The Trustee's Motion For The Entry Of Final Order to Use Cash Collateral, dated September 3, 2009 (Docket No. 178) (the "Cash Collateral Order"). A copy of the Cash Collateral Order is attached hereto as Exhibit C.

20. The Policy's $5 million dollar limit of liability includes reasonable legal fees and expenses incurred in the defense of any Claim. Indeed, pursuant to the Policy:

> Defense Expenses incurred by the insurer or the insured in defense of a Claim will be part of and not in addition to the Limits of Liability, and *payment of Defense Expenses by the insurer will reduce and may exhaust all applicable limits of Liability*.

(Ex. B. General Terms And Conditions, Section III. A. (2) (emphasis added).)

21. First Chicago, CoActiv, George Washington Savings Bank and West Suburban Bank (collectively, the "IFC Plaintiffs") named IFC as a defendant or as an intervention-defendant in the lawsuit captioned *First Chicago Bank and Trust v. IFC Credit Corporation*, Case No. 09 CH 22114 (Cir. Ct., Cook County, Ill.) (the "IFC Case"). In the IFC Case, the IFC

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in the Policy.

{7198 CMP A0241559.DOC 2}

Plaintiffs seek damages, injunctive relief and the appointment of a receiver based on allegations that the Debtor committed fraud, breached the loan agreement and breached a certain sales agreement. As of the Petition Date, the IFC Case was stayed. It is the Trustee's understanding, however, that Greenwich has been invoiced for a limited amount of Defense Expenses incurred prior to the Petition Date in connection with the IFC Case. A copy of the Order staying the IFC Case is attached hereto as Exhibit D.

22. Trebels, Langs, and Lee Trebels, (collectively, the "Trebels Defendants") have been named as defendants in the lawsuit captioned *First Chicago Bank and Trust v. Rudolph Trebels, et al.,* Case No. 09 CH 30153 (Cir. Ct., Cook County, Ill.) (*"Trebels"*). In *Trebels*, First Chicago seeks damages and injunctive relief based on allegations that the Trebels Defendents committed fraud, converted collateral for their personal use, and engaged in a conspiracy to defraud the plaintiffs. Specifically, First Chicago alleges that the Trebels Defendants: 1) diverted loan advances from required purposes; 2) withheld lease termination payments instead of paying down the First Chicago loan balance as required; 3) double-pledged collateral; and 4) knowingly caused First Chicago to lend into a Ponzi scheme. It is the Trustee's understanding that actions have been undertaken by counsel for the Trebels Defendants and that Greenwich has been invoiced for a limited amount of Defense Expenses in connection with the *Trebels* case. Furthermore, litigation of the *Trebels* case continues and Defense Expenses continue to grow.

23. Trebels and Langs have also been named as defendants in the lawsuit captioned *Manufacturers And Traders Trust Company, Successor By Merger To Court Square Leasing v. Trebels,* Case No. 09-4192 (E.D. Pa.) (*"M&T"*). In *M&T*, M&T seeks damages based on allegations that Insured Persons Rudy Trebels and Mark Langs committed fraud, converted collateral for their personal use, and engaged in a conspiracy to defraud the plaintiffs.

Specifically, M&T alleges that Trebels and Langs committed fraud and breached their fiduciary duties to M&T in connection with M&T's purchase from IFC of a stream of periodic lease payments, chattel paper, and certain related equipment. It is the Trustee's understanding that actions have been undertaken by counsel for Trebels and Langs and that Greenwich has been invoiced for a limited amount of Defense Expenses in connection with the *M&T* case. Furthermore, litigation of the *M&T* case continues and Defense Expenses continue to grow.

24. Trebels and Langs, IFC Credit Corporation and IFC Capital Funding I, LLC have also been named as defendants in the lawsuit captioned *CoActiv Capital Partners, Inc. v. IFC Credit Corp.*, Case No. 09-CV-06116 (N.D. Ill.) ("*CoActiv*" and together with the *IFC* Case, *Trebels* and *M&T*, the "Litigation"). In *CoActiv*, CoActiv seeks damages and an accounting based on allegations that IFC and Trebels and Langs committed fraud, converted collateral for their personal use, and engaged in a conspiracy to defraud the plaintiffs. Specifically, CoActiv alleges that Trebels and Langs committed fraud and breached their fiduciary duties to CoActiv in connection with the servicing of a sale and assignment agreement and a credit facility agreement. It is the Trustee's understanding that actions have been undertaken by counsel for the Debtor, Trebels and Langs and that Greenwich has been invoiced for a limited amount of Defense Expenses in connection with the *CoActiv* case. Furthermore, litigation of the *CoActiv* case may be continuing and Defense Expenses may be continuing to grow.

25. Prior to the Petition Date, on July 2, 2009, IFC provided written notice of general potential claims to Greenwich as required by the Policy (the "IFC Tender Letter"). The IFC Tender Letter is broad in its scope and does not serve as notice in connection with any particular action. A copy of the IFC Tender Letter is attached hereto as <u>Exhibit E</u>.

26. On August 21, 2009 counsel for Kiley and White provided written notice of general potential claims to Greenwich as required by the Policy (the "Kiley and White Tender Letter"). It is the Trustee's understanding that Greenwich has objected to the Kiley and White Tender Letter and all Defense Expenses incurred to date in connection with the claims noticed in the Kiley and White Tender Letter. It is also the understanding of the Trustee that Greenwich and Kiley and White are engaged in negotiations regarding the reimbursement of the Kiley and White Defense Expenses and that, as of this time, no additional Defense Expenses are being incurred in the legal defense of Kiley or White. Copies of the correspondence between Kiley and White and Greenwich, including the Kiley and White Tender Letter are attached hereto as Exhibit F.

27. On August 31, 2009, Mr. Vincent Borst of the law firm Borst & Collins, LLC ("Borst & Collins") provided written notice of the *Trebels* claims via e-mail communication to Mr. John W. Duchelle, counsel for Greenwich (the "Trebels Tender Letter") as required by the Policy. A copy of the Trebels Tender Letter is attached hereto as Exhibit G.

28. At this point in time, the Trustee believes that the Defense Expenses, IFC's aggregate liability, and the Insured Person's aggregate liabilities in the Litigation may well exceed the Policy Coverage Amount.

29. On August 31, 2009, counsel for Greenwich sent a letter to the Trustee providing a preliminary assessment of coverage for the claims in the *IFC* case (the "IFC Coverage Letter"). The IFC Letter advised IFC that Greenwich believed that no coverage would extend to cover the asserted claims in *IFC*, but that Greenwich had a duty to defend IFC from the claims – subject to a right to deny coverage and seek reimbursement of the Defense Expenses for claims not covered under the Policy. A copy of the IFC Coverage Letter is attached hereto as Exhibit H.

{7198 CMP A0241559.DOC 2}

30. On September 8, 2009 counsel for Greenwich sent a letter to the Trustee providing a preliminary assessment of coverage for the claims in the *Trebels* case (the "Trebels Coverage Letter"). The Trebels Coverage Letter advised IFC that Greenwich believed that no coverage would extend to cover the asserted claims in *Trebels*, but that Greenwich had a duty to defend the Trebels Defendants from the claims – subject to a right to deny coverage and seek reimbursement of the Defense Expenses for claims not covered under the Policy. A copy of the Trebels Coverage Letter is attached hereto as <u>Exhibit I</u>.

31. The IFC Coverage Letter and the Trebels Coverage Letter also advised the Trustee that IFC had previously sought Greenwich's consent to retain Borst & Collins to undertake the defense of IFC in the Litigation.

32. The Trustee has determined, in the exercise of his business judgment, that he does not wish to retain Borst & Collins for the defense of the Litigation. Borst & Collins is an unsecured creditor of the Debtor and may potentially represent an actual adverse interest in the IFC bankruptcy proceedings.

33. In response to IFC's and the Trebels Defendants' requests for coverage under the Policy for the Litigation. Greenwich has offered to advance Defense Expenses incurred by IFC and the Trebels Defendants in the Litigation subject to Greenwich's full reservation of rights to deny or limit coverage and seek reimbursement of any amounts paid. On September 11, 2009, Greenwich filed its Motion Of Greenwich Insurance Company For Relief From The Automatic Stay, To The Extent Applicable (Docket No. 193) (the "Greenwich Motion"). Greenwich sought relief from the automatic stay and authorization from the Court to advance Defense Expenses in connection with the Litigation.

34. Marc Langs requested a determination of indemnification from the Debtor pursuant to Article VII of the By-Laws, in an e-mail communication to counsel for the Trustee, dated October 12, 2009 and certified letter dated October 12, 2009 (collectively, the "Langs Indemnification Requests"). A copy of the Langs Indemnification Requests are attached hereto as Exhibit J.

35. Rudy Trebels and Lee Trebels have requested a determination of indemnification from the Debtor pursuant to Article VII of the By-Laws, in an e-mail communication from their counsel Mr. Vincent Borst to counsel for the Trustee, dated October 7, 2009 (the "Trebels Indemnification Request"). A copy of the Trebels Indemnification Request is attached hereto as Exhibit K.

36. While the Trebels Indemnification Request was made pursuant to the By-Laws, Rudy Trebels has an employment agreement with IFC that contains indemnification provisions and became effective on December 31, 2007 (the "Trebels Employment Agreement"). A copy of the Trebels Employment Agreement is attached hereto as Exhibit L.

37. There have been no other requests by individuals or entities for a determination of indemnification pursuant to Article VII of the By-Laws. No determination has been made by the Trustee as to whether IFC or its estate will indemnify any expenses in accordance with Article VII of the By-Laws. Pursuant to the § 721 Order, the Trustee has the authority to make this determination.

38. The Trustee has not yet determined whether he will file suit on behalf of the Debtor's estate against certain officers and directors of IFC or former officers and directors of IFC. These officers and directors may or may not include the Trebels Defendants or Kiley and White. Any lawsuits filed against these Insured Persons by the Trustee may include requests for

relief in the form of damages and injunctive relief for claims including, but not limited to, breach of fiduciary duty, which claims would fall under the coverage of the Policy.

39. At this time the Trustee has made a preliminary determination that the underlying transactions and factual allegations which would form the basis of a large number of, if not all of, the claims he may choose to assert in an action against the Trebels Defendants or Kiley and White would be substantially similar to the underlying transactions and factual allegations in the pending Litigation. The Trustee has also preliminarily determined that the claims in both the contemplated Trustee-filed lawsuit and the Litigation could potentially be satisfied from the Policy proceeds. Any advancement of Defense Expenses would diminish the available proceeds to indemnify IFC and any Insured Persons for judgments. Any shortfall of these Policy proceeds would detrimentally affect the administration of the estate.

40. Allowing the Litigation to proceed will not only affect the amount of property in the bankruptcy estate but also may disrupt the allocation of property among creditors. Accordingly, this Court has the power to enjoin the Litigation, pursuant to Section 105(a) of the Bankruptcy Code, pending further action by the Trustee in the exercise of his business judgment as to whether or not he will file suit against the Insured Persons.

41. The Policy expressly provides that Greenwich is liable to make payment for losses and has a duty to defend and pay Defense Expenses in connection with any claims made against IFC or Insured Persons to the extent the claim is brought by a bankruptcy trustee. (Ex. B, Policy, Management Liability And Company Reimbursement Coverage Part, Article III, Section (F)(2).) The Policy contemplates and provides for situations wherein a bankruptcy trustee brings forth claims against former directors and officers on behalf of the insured corporation.

{7198 CMP A0241559.DOC 2}

## COUNT I

### Injunction Under Section 105 of the Bankruptcy Code Staying the Litigation And Prohibiting Defendants From Attempting To Obtain Possession Or Control Of D&O Policy Proceeds

42. The Trustee restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 40 as paragraph 41.

43. Section 105(a) of the Bankruptcy Code empowers this Court, in the exercise of its equitable powers, to fashion relief that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

44. In furtherance of the broad grant of power under Section 105(a) of the Bankruptcy Code and applicable law, a bankruptcy court may enjoin actions against non-debtor under a variety of circumstances, including situations where non-debtor's claims may affect the amount of property in the debtor's estate.

45. Any further prosecution of the Litigation resulting in the necessary expenditure for legal defense expenses and any attempts to obtain possession or control over the D&O Policy Proceeds should be stayed pursuant to Section 105(a) of the Bankruptcy Code in order to (a) preserve and protect the assets of the Debtor's estate; (b) prevent the duplication of effort and interference with the Trustee's efforts to protect, preserve and pursue the Debtor's assets should the Trustee decide to pursue an action against the Insured Persons; (c) allow the Trustee time to review the facts and make a decision as to whether to pursue such action; (d) prevent the substantial confusion of other creditors and potential plaintiffs with respect to whether they must file separate actions to protect their interests; and (e) maximize judicial economy.

46. Injunctive relief is necessary and proper in this instance because no other remedies at law are adequate. More importantly, however, the Litigation impairs this

Bankruptcy Court's jurisdiction and administration over the Case before it, as the Litigation is sufficiently related to the Debtor's estate by virtue of the fact that the Litigation and related Defense Expenses impacts the amount of property in the Debtor's estate.

47. The requested injunction will not harm the public interest, which favors an orderly distribution of estate assets. The advancement of legal Defense Expenses to the Trebels Defendants would result in a potential windfall to the Trebels Defendants -- whose legal defense in the Litigation would be paid immediately through the D&O Policy proceeds based request for indemnification pursuant to a repetition right (*i.e.* the By-Laws) with respect to Rudy Trebels, Lang, Kiley and White, and pursuant to a prepetition employment agreement (*i.e* the Trebels Employment Agreement) with respect to Rudy Trebels. The Trebels Defendants should be placed in no better position than any other unsecured creditor in the Case.

48. Other equitable considerations favor an injunction. Absent an injunction, the Trustee, on behalf of the creditors of the Debtor's estate, will be hindered in his required effort to protect, preserve and pursue the claims, interests and recoveries of the various classes of creditors against potential depletion by the Insured Persons.

49. The injunction requested is necessary and appropriate to carry out the provisions of the Bankruptcy Code and to insure that this Court will have the ability to administer the Debtor's chapter 7 Case without impairment.

**WHEREFORE**, the Trustee respectfully requests that the Bankruptcy Court enter judgment in his favor and against the Defendants:

    (a)    Enter an Order pursuant to Section 105(a) of the Bankruptcy Code enjoining First Chicago Bank And Trust, CoActiv Capital Partners, Inc., and Manufacturers and Traders Trust Company from any further prosecution of or further action in the Litigation until the conclusion of any Trustee action relating to the Litigation claims or a determination by the Trustee that no suit relating to the Litigation claims will be filed;

(b) Enter an Order pursuant to section 105(a) of the Bankruptcy Code enjoining Rudy Trebels, Marc Langs, Lee Trebels, James Kiley and James White from making any attempts to obtain possession or control over D&O Policy proceeds including, but not limited to, Defense Expenses;

(d) Enter an Order pursuant to section 105(a) of the Bankruptcy Code enjoining Greenwich Insurance Company from advancing or otherwise distributing any Policy proceeds including, but not limited to, the Defense Expenses; and

(b) Awarding the Debtor such other and further relief as it deems appropriate.

## COUNT II

### Declaratory Judgment That the D&O Policy Proceeds Are Property Of The Debtor's Estate And That Any Expenditure Of Proceeds Is Automatically Stayed Under § 362(a)(3) Of The Bankruptcy Code

50. The Trustee restates and incorporates by reference herein the allegations asserted in paragraphs 1 through 48 as paragraph 49.

51. The D&O Policy proceeds are property of the Debtor's bankruptcy estate because the Litigation claims raised are insured under the D&O Policy. Both the Litigation claims and the anticipated claims to be brought by the Trustee as set forth in paragraphs 38 and 39 above, are covered claims under the Policy. (*See* Ex. B, Insuring Agreement I (A) and (B).)

52. Independently, the D&O Policy proceeds are property of the Debtor's estate because there is a risk that the Litigation indemnification claims may be insured under the D&O Policy. The Litigation and related Defense Expenses will deplete the D&O Policy proceeds and force claims for indemnification to fall upon the Debtor's estate. As a result, the continuation of the Litigation and the related Defense Expenses creates a risk that the Trustee, acting on behalf of the general unsecured creditors, could be left with reduced or (perhaps) no coverage.

53. Unless the Litigation is stayed, the Policy proceeds will be depleted during the course of the bankruptcy case. Because the Debtor's estate is worth more with the Policy proceeds than without them, the proceeds of the Policy are property of the Debtor's estate.

54. The Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3) (the "automatic stay"). Accordingly, any of the attempts by any of the Litigation Plaintiffs, the Trebels Defendants or Kiley and White to obtain possession of or exercise control over the Policy proceeds, whether by judgment or by way of Defense Expenses, would be a direct violation of the automatic stay.

55. There is an actual controversy between the parties.

**WHEREFORE**, the Trustee respectfully requests that the Court enter judgment in its favor and against the Defendants:

(a) Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 against First Chicago Bank And Trust, , CoActiv Capital Partners, Inc., Manufacturers and Traders Trust Company Greenwich Insurance Company, and Rudy Trebels, Mark Langs, Lee Trebels, James Kiley and James White declaring that (i) the Policy proceeds are property of the Debtor's estate and (ii) any attempt by the aforementioned parties to obtain possession of or exercise control over any of the Policy proceeds, by any means or method, would violate § 362(a)(3) of the Bankruptcy Code;

(b) Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 against Greenwich Insurance Company declaring that (i) the Policy proceeds are property of the Debtor's estate and (ii) and advance distribution of Policy proceeds for any purpose including, but not limited to, the Defense Expenses would violate § 362(a)(3) of the Bankruptcy Code; and

(b) Awarding the Debtor such other and further relief as it deems appropriate.

{7198 CMP A0241559.DOC 2}

|  | Respectfully submitted,<br>David P. Leibowitz, solely in his capacity as the Chapter 7 Trustee, for the Estate of IFC Credit Corporation |
|---|---|
| Dated: October 20, 2009 | By: */s/ John Guzzardo*<br>     One of his attorneys |

Ira Bodenstein
David B. Goodman
John Guzzardo
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 276-1333 phone
(312) 275-0569 fax

{7198 CMP A0241559.DOC 2}

17