**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| IFC CREDIT CORPORATION | : | Chapter 11 |
| | : | |
| Debtor. | : | Case No. 09 B 27094 |
| | : | |
| _____ | : | Hon. Jacqueline P. Cox |
| | : | |
| DAVID LEIBOWITZ | : | |
| as Chapter 7 Trustee for estate of | : | |
| IFC Credit Corporation | : | |
| | : | |
| Plaintiff, | : | Adv. No. 09-01010 |
| | : | |
| v. | : | |
| | : | |
| FIRST CHICAGO BANK AND | : | |
| TRUST COMPANY, et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT COACTIV CAPITAL PARTNERS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO TRUSTEE'S MOTION FOR A PRELIMINARY INJUNCTION PURSUANT TO SECTIONS 105(A) AND 362(A)(3) OF THE BANKRUPTCY CODE**

CoActiv Capital Partners, Inc. ("CoActiv"), Defendant in the above-captioned Adversary Proceeding, by and through its undersigned counsel, submits this Memorandum of Law in opposition to the motion of David P. Leibowitz, as Chapter 7 Trustee (the "Trustee") for the estate of IFC Credit Corporation ("IFC" or the "Debtor") for a preliminary injunction pursuant to Sections 105(a) and 362(a)(3) of Title 11 of the United States Code (the "Bankruptcy Code"). In support of its opposition, CoActiv states as follows:

I.   **FACTS**

Beginning in June 2007 CoActiv purchased certain leases and assets related thereto from IFC pursuant to several agreements. *See* Complaint of CoActiv Capital Partners, attached hereto as Exhibit A, ¶7.  CoActiv and IFC also agreed that IFC would perform certain services related to the administration of each lease and the accounting of funds related to each individual lease.  *See* Exhibit A, ¶8.  IFC, IFCI, and CoActiv were also parties to a loan transaction wherein CoActiv provided funding to IFCI by means of a $25,000,000.00 credit facility for IFCI to purchase certain leases from IFC.  *See* Exhibit A, ¶9.  As part of that transaction, IFC and IFCI entered into an Assignment of Servicing Agreement wherein IFC assumed IFCI's servicing requirements and agreed to service and administer the leases for the benefit of CoActiv.  Id.  In 2008, after various defaults by IFC under the existing agreements, Plaintiff and Defendants entered into an Omnibus Amendment Agreement, which further defined the obligations and relationships between the parties.  *See* Exhibit A, ¶ 10.

On July 9, 2009, CoActiv brought suit against IFC, IFCI, Trebels and Langs (the "IFC Defendants") in the United States District Court for the Eastern District of Pennsylvania (the "CoActiv Litigation"), Case No. 2:09-cv-03065, as a result of the rampant misconduct of all IFC Defendants in relation to those agreements.  As outlined in CoActiv's Complaint, the IFC Defendants negligently or intentionally falsified Servicing Reports to CoActiv regarding the termination of leases and misappropriated funds related to those lease terminations. *See* Exhibit A, ¶¶22-24.  In addition, the IFC Defendants wrongfully withheld and misappropriated other funds to which CoActiv was entitled under the agreements.  *See* Exhibit A, ¶29.  Based on the foregoing, it is CoActiv's contention that IFC was insolvent beginning some time in

2

2008.  *See* Exhibit A, ¶ 30.  Further, it is CoActiv's contention that the IFC Defendants' misconduct had the intention and effect of falsely inflating IFC's financial condition, and benefitting Langs and Trebels at the expense of CoActiv.  *See* Exhibit A, ¶¶63-65.  On September 28, 2009, pursuant to CoActiv's motion, the Eastern District of Pennsylvania transferred the CoActiv Litigation to the District Court for the Northern District of Illinois, Case No. 1:09-cv-06116.

On July 27, 2009, IFC filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), Case No. 09-27094.[1]

On October 20, 2009, the Trustee commenced the instant proceeding by filing a Verified Adversary Complaint (the "Adversary Complaint"), seeking injunctive and declaratory relief against CoActiv, First Chicago Bank and Trust ("First Chicago"), Manufacturers and Traders Trust Company ("M&T"), Greenwich Insurance Company ("Greenwich"), Lee Trebels ("Mrs. Trebels") and former directors and/or officers of IFC, Trebels, Langs, James W. Kiley ("Kiley") and James F. White ("White") (collectively, the "Defendants").  The Trustee also filed a Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a)(3) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Motion").  Through the Motion, the Trustee seeks an order of this Court enjoining the CoActiv

---

[1] Since the commencement of the IFC bankruptcy case, CoActiv has not taken any action to continue prosecution of its claims against IFC in the CoActiv Litigation.  As noted above, CoActiv moved for a transfer of venue to the Northern District of Illinois and a referral to this Court, based on the grounds that, *inter alia*, CoActiv's claims against IFC may be "related to" the IFC bankruptcy case.  While the CoActiv Litigation has been transferred to the District Court for the Northern District of Illinois, CoActiv's request to refer the CoActiv Litigation to this Court is still pending.  If, however, reference is not made to this Court, CoActiv will either file a separate adversary proceeding against IFC in this Court or seek relief from the automatic stay to continue the litigation of its claim against IFC in order to liquidate such claim.

3

Litigation, specifically CoActiv's claims against Trebels and Langs, other pending lawsuits brought by First Chicago, against Trebels, Mrs. Trebels, and Langs, and by M&T against Trebels and Langs, and attempts by Trebels, Mrs. Trebels, Langs, Kiley and White to receive proceeds of IFC's Director and Officer Liability Insurance Policy (the "D&O Policy").

The D&O Policy, issued by Greenwich on July 20, 2008, provides liability coverage for, *inter alia*, management liability and company reimbursement. The D&O Policy provides coverage up to a maximum aggregate limit of liability of $5,000,000, which limit includes payment of defense expenses. *See* D&O Policy, a copy of which is attached to the Adversary Complaint as Exhibit B. The D&O Policy provides coverage to both "Insured Persons," defined in part as "any past, present or future director or officer, or member of the Board of Managers, of the Company," and the "Company" (IFC). *See* D&O Policy, Management Liability and Company Reimbursement Coverage Part. More specifically, the D&O Policy provides that

> (A) The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act, except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.
> (B) The Insurer shall pay on behalf of the Company Loss:
> (1) which the Company is required or is permitted to pay as indemnification to the Insured Persons resulting from a Claim first made against the Insured Persons; or
> (2) resulting from a Claim first made against the Company;
> during the Policy Period, or, if applicable, the Optional Extension Period, for a Wrongful Act.

*Id.* Subsequent to filing of the Petition, the Trustee funded the premium for tail coverage on the D&O Policy. *See* Adversary Complaint, ¶19.

4

## II. ARGUMENT

### A. CoActiv's Claims Against Trebels and Langs are Not Subject to the Automatic Stay Pursuant to § 362(a)(3) of the Bankruptcy Code, as the Proceeds of the D&O Policy Are Not Property of the Bankruptcy Estate

The Trustee contends that CoActiv's pending claims against Trebels and Langs must be stayed pursuant to § 362(a)(3) of the Bankruptcy Code, which provides for a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Trustee claims that any judgment for CoActiv against Trebels and Langs, as well as defense costs for Trebels and Langs, would be paid from the D&O Policy, which the Trustee argues is property of the estate. However, for the reasons set forth below, the proceeds of the D&O Policy that may be payable to Trebels and Langs are not properly considered property of the estate, and, therefore, § 362(a)(3) is inapplicable to the present case.

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, while the term "property of the estate" "for purposes of § 541 is afforded a broad interpretation, it is not without its limits." *In re ANR Advance Transp. Co.*, 247 B.R. 771, 774 (Bankr. E.D. Wis. 2000). Notably, § 541 does not expand the rights of the debtor in any particular property, nor does it create new rights that did not previously exist. As the 7th Circuit has stated, "filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds the interest." *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992). *See also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less."); *Appleton v. Gagnon (In re Gagnon)*, 26 B.R. 926, 928

5

(Bankr. M.D. Pa. 1983) ("Notwithstanding the scope of the language used in §541(a), as of the commencement of the bankruptcy, the estate's legal and equitable interests in property rise no higher than those of the debtor.").

The Trustee argues that the D&O Policy is property of the estate.  And indeed, courts have generally held that when a corporation has purchased an insurance policy to cover directors and officers, the policy itself is property of the estate.  *See, e.g., Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 529 (Bankr. N.D. Ill. 2002) ("There is no question that the policies themselves are estate property."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986), cert. denied 479 U.S. 876 (1986). In this case, where IFC purchased the policy and paid the premiums (which payments, since IFC sought the protection of this Court, have been continued by the Trustee), the D&O policy itself would be considered to be property of the estate under § 541.

The Trustee, however, makes the impermissible logical leap that because the D&O Policy is property of the bankruptcy estate, the proceeds of the D&O Policy must be property of the estate as well.  This conclusion is simply incorrect as a matter of law.  The proceeds of the D&O Policy at issue are not properly considered property of IFC's bankruptcy estate.  While the Trustee cites the Ninth Circuit decision of *In re Minoco Group Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986), for the proposition that insurance proceeds are property of a bankruptcy estate, the Trustee ignores that the *Minoco* court was addressing the question of the ownership of insurance policies, and not the proceeds payable thereunder. 799 F.2d at 520.  Specifically, the court addressed the question of whether the carrier could cancel the policies at issue after the debtor had sought bankruptcy protection, and held that cancellation of the policy at issue was automatically stayed under § 362(a).  *Id.*

6

In *Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition)*, 832 F.2d 1391, 1401 (5th Cir. 1987), a seminal case from the Fifth Circuit, the court held that the proceeds of a D&O policy are not assets of the bankruptcy estate, as the directors and officers are the intended beneficiaries of the policy.  Recognizing the unique nature of D&O policies, the Fifth Circuit distinguished between ownership of the policy itself, and ownership of the liability proceeds.  As the policy provided coverage for liability of the individual officers and directors, the Fifth Circuit held that the policy proceeds were not part of the bankruptcy estate, and hence did not fall within the scope of the automatic stay under 11 U.S.C. 362(a)(3). *See Id.*; *see also In re Daisy Systems Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (distinguishing between policies and their proceeds, holding that the proceeds of D&O policies "are not simply assets of Daisy's bankruptcy estate to be divided among creditors according to bankruptcy law.")

In this case, the current and former directors and officers of IFC, including Trebels and Langs, are beneficiaries under the D&O Policy.  The Management Liability and Company Reimbursement Coverage Part of the D&O Policy provides in part that

> The Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period or, if applicable, the Optional Extension Period, for a Wrongful Act, except for Loss which the Company is permitted or required to pay on behalf of the Insured Persons as indemnification.

Adversary Complaint, Exhibit B.  Therefore, regardless of IFC's ownership of the policy itself, so long as the claims of Trebels and Langs on the D&O Policy are for defense expenses or for loss, as defined and permitted under the D&O Policy, then those funds paid out under the D&O Policy are not property of the estate under § 541.  *See In re Louisiana World Exposition*, 832 F.2d at 1400; *see also Cardinal Casualty Co. v. Correct Manufacturing Corp. (In re Correct Manufacturing Corp.*, 88 B.R. 158,162

(Bankr. E.D.N.Y. 1988) (holding that while legal title to the insurance policies at issue remained with the debtor/trustee, "[t]he estate's interests do not encompass the right to receive the proceeds of the insurance policies."); *Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) (finding that the policy at issue was obtained primarily for the benefit of the directors and officers, and stating that the court is "unwilling to divest the Officers and Directors of the liability protection they bargained for, including ongoing draw down of legal fees.").

The result is not different in this case simply because the D&O Policy contains provisions allowing for direct coverage to IFC, and reimbursement for indemnification of directors and officers. Specifically, the D&O Policy provides that

> The Insurer shall pay on behalf of the Company Loss:
> (1) which the Company is required or is permitted to pay as indemnification to the Insured Persons resulting from a Claim first made against the Insured Persons; or
> (2) resulting from a Claim first made against the Company;
> during the Policy Period, or, if applicable, the Optional Extension Period, for a Wrongful Act.

Adversary Complaint, Exhibit B.

Such provisions, entitling IFC to access to the proceeds of the D&O Policy under certain conditions, do not make the entire policy property of the estate under §541. As the District Court for the Eastern District of New York explained in *In re First Central Financial Corp.*,

> D&O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose. There is an important distinction between the individual liability and the reimbursement portions of a D&O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D&O policy. It is insured indirectly for its indemnification obligations. In essence and at its

8

> core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection

*In re First Central*, 238 B.R. at 16; *see also In re Daisy Sys. Sec. Litig.*, 132 B.R. at 755 (holding that proceeds of D&O policies were not assets of the estate because the directors and officers were there primary beneficiaries of the policies); *Imperial Corp. of America v. Milberg, Weiss, Bershad, Specthrie & Lerach (In re Imperial Corp. of America)*, 144 B.R. 115 (S.D. Cal. 1992) (following rule of *In re Louisiana World Exposition*, despite existence of indemnification coverage under applicable policy).

This Court has held that proceeds of D&O policies, even policies containing indemnification provisions, are not property of the estate subject to the protection of the automatic stay under § 362(a)(3) of the Bankruptcy Code. In *Maxwell v. Megliola (In re marchFIRST, Inc.)*, this Court analyzed a policy similar to the one at issue here, stating that

> [w]hen an insurer pays for the defense of an action against the directors and officers, it does so with a reservation of its rights. No one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment. Any property interest in the proceeds has not yet matured and may never mature.[2]

288 B.R. 526, 530 (Bankr. N.D. Ill. 2002). In other words, until there is some agreement or order requiring the insurance carrier to issue payment to IFC, IFC cannot be considered to have a property interest in the insurance proceeds, and therefore the proceeds are not property of the estate.

For the foregoing reasons, the proceeds of the D&O Policy are not property of the estate under §541 of the Bankruptcy Code. The proceeds of the D&O Policy is

---

[2] In *In re marchFIRST*, while holding that the insurance policy was not part of the bankruptcy estate and thus not subject to the automatic stay, this Court granted an injunction under Section 105 of the Bankruptcy Code. 288 B.R. at 533. The Court's analysis under Section 105 and its applicability to the instant case will be discussed in Section II.B.2, infra.

thus not subject to the automatic stay under § 362(a)(3), and there is no basis for an injunction to issue on this ground.

B. **The Trustee Has Failed to Demonstrate Entitlement to an Injunction Pursuant to § 105(a) of the Bankruptcy Code**

The Trustee has failed to demonstrate entitlement to an injunction in this case. As set forth below, the Trustee has failed to show that enjoining CoActiv's suit against Trebels and Langs is proper under applicable Seventh Circuit case law, has failed to show a likelihood of success on the merits of his claims, has failed to allege any specific harm either to the bankruptcy estate or to the public.

1. **Standard of Review**

Pursuant to § 105(a) of the Bankruptcy Code, a bankruptcy court may exercise its equitable powers, including granting injunctive relief, where "necessary" and "appropriate" to carry out the provisions of the Bankruptcy Code. However, "Section 105 of the Code was not intended to grant bankruptcy courts powers without bounds . . . and the court's equitable powers thereunder are not unrestricted." *Matter of Johns-Manville Corp.*, 26 B.R. 405, 415 (S.D.N.Y. 1983). As the Seventh Circuit has noted, §105(a), while expansively phrased, "affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes a roving commission to do equity" *Village of Rosemont v. Jaffe*, 482 F.3d 926, 935-36 (7th Cir. 2007) (internal citations and quotations omitted).

Under Seventh Circuit case law, to enjoin proceedings in other courts against non-debtor third parties, a bankruptcy court must be "satisfied that such proceedings would defeat or impair its jurisdiction over the case before it." *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998) (quoting *In re L&S Industries, Inc.*, 989 F.2d 929 (7th Cir. 1993)). The *Apostolou* court held further that:

10

> [i]n limited circumstances, the trustee may temporarily block adjudication of claims that are not property of the estate by petitioning the bankruptcy court to enjoin the other litigation, if it is sufficiently "related to" her own work on behalf of the estate. The jurisdiction of the bankruptcy court to say actions in other courts extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate or the allocation of property among creditors.

155 F.3d 882 (internal citations and quotations omitted). While the Seventh Circuit Court of Appeals has held that the court does not need to demonstrate an inadequate remedy at law or irreparable harm, "the moving party must still establish a likelihood of success on the merits," and must show that the public interest will be served by the injunction. *Id. See also In re marchFIRST, Inc.*, 288 B.R. at 530.

### 2. The Trustee Is Not Entitled to Enjoin CoActiv's Suit Against Trebels and Langs Because An Injunction is Not Proper Under *Apostolou* and its Progeny

In *Apostolou*, the Seventh Circuit Court of Appeals held that in limited circumstances, a trustee may properly enjoin proceedings in other courts "if it is sufficiently *'related to' [the trustee's] own work on behalf of the estate*," and that a court may properly issue such an injunction in suits "which may affect the amount of property in the bankruptcy estate or the allocation of property among creditors." 155 F.3d 882 (emphasis added). In this case, the Trustee has failed to demonstrate why this should be one of those "limited circumstances."

First, the Trustee has failed to show that CoActiv's suit against Trebels and Langs will affect the property of the estate. As discussed above in Section II.A, the D&O Policy, to the extent it constitutes a possible source of coverage for the claims and defense costs related to CoActiv's suit against Trebels and Langs, is not properly considered property of the estate. *See, e.g., In re Louisiana World Exposition*, 832 F.2d at 1400 (holding that D&O policy proceeds are not property of the bankruptcy estate);

11

*(In re First Central Financial Corp.)*, 238 B.R. at 21 (finding that the policy at issue was obtained primarily for the benefit of the directors and officers, and stating that the court is "unwilling to divest the Officers and Directors of the liability protection they bargained for, including ongoing draw down of legal fees.").

Additionally, the Trustee has not demonstrated how CoActiv's suit against Trebels and Langs is "related to" his work on behalf of the IFC bankruptcy estate as *Apolstolou* requires. Notably, the Trustee has not yet brought any claims against Trebels, Langs, or any other former officers or directors of IFC, and thus the contours of the Trustee's "work on behalf of the state" is not entirely clear. Thus any claim by the Trustee that CoActiv's suit against Trebels and Langs is related to, or will somehow interfere with that work is too speculative to justify injunctive relief at this time.

To the extent that the Trustee may bring claims as a hypothetical judgment lien creditor against Trebels, Langs, and other former directors and officers pursuant to §544 of the Bankruptcy Code, such claims would not be related to CoActiv's suit against Trebels and Langs, as § 544 "does not extend beyond avoidance actions, and does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors." *McHale v. Alvarez (In re The 1031 Tax Group, LLC)*, 397 B.R. 670 (Bankr. S.D.N.Y. 2008). The Trustee may attempt to pursue state law claims, such as breach of fiduciary duty, against the former directors and officers of IFC, pursuant to § 541 of the Bankruptcy Code. *See Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987) (holding that state law claims against officers and directors brought by the trustee are properly brought pursuant to § 541 of the Bankruptcy Code). However, such claims may well be barred by the *in pari delicto* doctrine. *See* Section II.B.3, *infra*.

For these reasons, the Trustee cannot demonstrate that CoActiv's suit against Trebels and Langs is sufficiently related to his work on behalf of the estate to justify the extraordinary remedy of injunctive relief under *Apostolou*. At best, the Trustee's request for injunctive relief is premature, where the Trustee has yet to institute any proceedings against Trebels, Langs, or other former directors and officers of IFC.

The Trustee attempts to circumvent the standard set forth in *Apostolou* by arguing that CoActiv's claims are "related to" the prospective Trustee action sufficient to give this Court jurisdiction to enjoin CoActiv's suit pursuant to § 105(a). Specifically, the Trustee argues this Court can enjoin CoActiv's suit against Trebels and Langs in favor of the Trustee's potential forthcoming suit because "(a) the claims in the Litigation arise out of the same underlying transactions and factual allegations, (b) both actions seek recovery from the same pool of assets, and (c) there is an overlap of defendants named in the two lawsuits." Trustee's Brief, ¶16.

In this case, the Trustee has not carried the burden of demonstrating that CoActiv's claims and the Trustee's hypothetical claims arise out of the same underlying factual allegations. As discussed above, CoActiv's claims are personal to CoActiv, and arise out of an ongoing business relationship and various written agreements between CoActiv and IFC, IFCI, Trebels and Langs. Further, the fraudulent misrepresentations alleged by CoActiv were made exclusively to CoActiv, and not to other creditors or the public at large. Nor do CoActiv's claims arise out of the same underlying factual allegations as the other proceedings the Trustee seeks to enjoin, namely those suits prosecuted by First Chicago and M&T.

For this reason, the instant case is distinguishable from *In re marchFirst, Inc.*, discussed above. In *marchFIRST*, this Court issued an injunction under § 105(a) to stay a shareholder suit against former officers and directors of the debtor, where the

13

trustee had filed suit alleging claims against the same officers and directors based upon the same alleged misconduct. 288 B.R. at 531-32. As CoActiv's claims against Trebels and Langs do not arise out of the same underlying factual allegations as either those claims brought the other Defendants in this Adversary Proceeding or the claims potentially to be brought by Trustee, CoActiv's claims are not "related to" the Trustee's potential claims on that ground.

The Trustee has also failed to demonstrate that he and CoActiv would seek recovery from the same pool of assets, namely the D&O Policy, to the detriment of the bankruptcy estate. As the Trustee has not yet filed suit, and the Court cannot yet know what claims the Trustee will bring should he choose to file suit at all, the Trustee is unable to prove that he would have any claim at all to the proceeds of the D&O Policy. Further, as discussed above, "[n]o one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment. Any property interest in the proceeds has not yet matured and may never mature." *In re marchFIRST, Inc.*, 288 B.R. at 530.

Even assuming *arguendo* that the Trustee has some claim to any of the proceeds of the D&O Policy, there has been no showing of any superior right to those proceeds over and above Trebels, Langs, and other current and former directors and officers of IFC. As the court noted in *In re First Financial Corp.*, "[a]lthough debtor liability policies have been shielded from third party suits that threaten to deplete assets, the Trustee has not pointed to a case, nor are we aware of one, in which a court has protected D&O policy proceeds so as to facilitate a prioritization in favor of a trustee or debtor-in-possession to such funds." 238 B.R. at 21.

As the Trustee has failed to prove that CoActiv's suit is "related to" the potential Trustee action, the Trustee's motion for a preliminary injunction should be denied.

14

### 3. The Trustee Has Not Demonstrated a Likelihood of Success on the Merits

The Trustee has failed to meet the burden for obtaining injunctive relief under §105(a). Pursuant to *Apostolou*, the Trustee in seeking the extraordinary remedy of an injunction of a proceeding in another court must prove a likelihood of success on the merits of his claims on behalf of the estate. *See Apostolou*, 155 F.3d at 882.

Of course, such an analysis is complicated by the fact, discussed above in Section II.B.2 *supra*, that the Trustee has not actually instituted any proceedings against Trebels, Langs, or any other former officers and directors asserting claims on behalf of the estate. According to the Adversary Complaint, the Trustee has not yet decided whether or not to

> file suit on behalf of the Debtor's estate against certain officers and directors of IFC or former officers and directors of IFC. These officers and directors *may or may not* include the Trebels Defendants and Kiley and White. Any lawsuits filed against these persons by the Trustee may include requests for relief in the form of damages and injunctive relief for claims including, but not limited to, breach of fiduciary duty.

Adversary Complaint, ¶13 (emphasis added). While the Trustee asserts that "the underlying transactions and factual allegations which would form the basis of a large number of, if not all of, the claims he may choose to assert in an action against the [officers and directors] would be substantially similar to the underlying transactions and factual allegations" in the suits filed by CoActiv and the other Defendants, Adversary Complaint, ¶ 14, the Trustee has set forth no details that would allow this Court to assess the merits of the Trustee's case.

However, to the extent that the Trustee's prospective claims are based on some of the facts alleged by CoActiv, namely the allegations of fraudulent conduct by Trebels and Langs, those claims of the Trustee may be barred by the *in pari delicto* doctrine.

15

Pursuant to the *in pari delicto* doctrine, the Trustee, acting on behalf of the debtor's estate, would be unable to pursue an action against third parties who participated in the debtor's wrongdoing. *See, e.g., Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1276 (10th Cir. 2008) ("[I]t is well established that *in pari delicto* may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor.").

For these reasons, the Trustee has failed to prove a likelihood of success on the merits of his claims on behalf of the estate, and the Trustee's request for a preliminary injunction should be denied.

### 4. The Trustee Has Failed to Substantiate Any Claims of Harm to the Estate

"Injunctions are extreme remedies. Therefore, more than perceived necessity is required to demonstrate their appropriateness." *In re First Central Financial Corp.*, 238 B.R. at 20. An injunction is not appropriate in this case, as the Trustee is relying entirely on perceived, speculative harm to the estate. The Trustee asserts that he believes that the "Defense Expenses, IFC's aggregate liability, and the Trebels Defendants' aggregate liabilities in the Litigation may well exceed the Policy Coverage Amount." Elsewhere, the Trustee alleges that:

> The Litigation and related Defense Expenses will deplete the D&O Policy proceeds and force claims for indemnification to fall upon the Debtor's estate. As a result, the continuation of the Litigation and the related Defense Expenses creates a risk that the Trustee, acting on behalf of the general unsecured creditors, could be left with reduced or (perhaps) no coverage.

Adversary Complaint, ¶52. Yet the Trustee does not provide the Court, or CoActiv, with any evidence for this claim, nor is there even an estimate of either the amount of defense expenses that have been disbursed or claimed thus far or the expected amount to be claimed in the future. Nor has the Trustee presented any evidence to

16

support the assertion that the personal assets of Trebels, Langs, and the other former directors and officers, together with the D&O Policy, would be insufficient to cover defense expenses and any judgments against those directors and officers.

Further, while the Trustee raises the specter of a mad rush to drain the policy proceeds for defense expenses, citing the First Chicago, M&T, and CoActiv cases, by the Trustee's own admission, the only defense expenses currently being paid under the D&O Policy are the expenses in First Chicago's suit against Trebels and Langs. While Kiley and White have made claims under the D&O Policy, Greenwich has objected to their requests for reimbursement of defense expenses. Adversary Complaint, ¶26. There is no allegation that Greenwich has paid any claims for defense expenses pursuant to either CoActiv's or M&T's suits. Adversary Complaint, ¶¶ 23-24.

Because the Trustee's claims of harm are at best speculative, the Trustee cannot prove that the public interest favors the issuance of an injunction pursuant to § 105(a). On the contrary, issuing an injunction would harm CoActiv, in that it would be unable to pursue its claims against the non-debtor third parties and receive a determination of the amount of its claim against those third parties. As such, the Trustee's request for a preliminary injunction pursuant to § 105(a) of the Bankruptcy Code should be denied.

### III. <u>**CONCLUSION**</u>

For the foregoing reasons, Defendant, CoActiv Capital Partners, Inc., respectfully requests that this Court deny the Trustee's motion for a preliminary injunction pursuant to §§ 105(a) and 362(a)(3) of the Bankruptcy Code.

                Respectfully submitted,

                \_\_/s/ David P. Vallas_____
David P. Vallas
\# 06273499
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, IL  60606-1229
(312) 201-2000 (telephone)
(312) 201-2555 (facsimile)
Firm I.D. 10535

DEEB, PETRAKIS, BLUM & MURPHY, P.C.
Inez M. Markovich, *pro hac vice*
1601 Market Street, Suite 2600
Philadelphia, PA 19103
215-563-0500 – telephone
215-563-5532 – facsimile
imarkovich@dpattorneys.com

Dated:  November 4, 2009        Counsel for COACTIV CAPITAL PARTNERS, INC.

## CERTIFICATE OF SERVICE

    I, David P. Vallas, Esquire, hereby certify that on November 4, 2009, I electronically filed the foregoing Defendant Coactiv Capital Partners, Inc.'s Memorandum Of Law In Opposition To Trustee's Motion For A Preliminary Injunction Pursuant To Sections 105(A) And 362(A)(3) Of The Bankruptcy Code, with the United States Bankruptcy Court for the Northern District of Illinois Eastern Division using CM/ECF System.

    By:   /s/ David P. Vallas

Patrick Cotter, Esquire
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833
Patrick.cotter@BTLaw.com
*Counsel for Marc Langs*

John B. Simon, Esquire
Jenner & Block LLP
330 N. Wabash Ave.
Chicago, IL 60611
jsimon@jenner.com
*Counsel for Rudolph D. Trebels*

Sarah H. Doran, Esquire
John Duchelle, Esquire
Troutman Sanders, LLP
55 W. Monroe Street, Suite 3000
Chicago, IL 60603
sara.doran@troutmansanders.com
john.duchelle@troutmansanders.com
*Counsel for Greenwich Insurance Co.*

Matthew R. Carter, Esquire
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
mcarter@winston.com
*Counsel for James W. Kiley and James F. White*

John P. Sieger, Esquire
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
john.sieger@kattenlaw.com
*Counsel for First Chicago Bank & Trust*

Deidre M. Richards, Esquire
Steven Levin, Esquire
Lamm Rubenstone LLC
3600 Horison Blvd., Suite 200
Trevose, PA 19053
drichard@lammrubenstone.com
slevin@lammrubenstone.com
*Counsel for Manufacturers And Traders Trust Company*

John Guzzardo, Esquire
Shaw Gussis Fishman Glantz
 Wolfson & Towbin LLC
31 North Clark Street, Suite 800
Chicago, IL 60654
jguzzardo@shawgussis.com