IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| IFC CREDIT CORPORATION, | Case No. 09-B-27094 |
| | Hon. Jacqueline P. Cox |
| Debtor. | |
| _____/ | |
| | |
| DAVID P. LEIBOWITZ,  as Chapter 7 trustee for IFC Credit Corporation, | |
| | |
| Plaintiff, | Adv. Pro. No. 09-01010 |
| | |
| v. | |
| | |
| FIRST CHICAGO BANK AND TRUST; | Date of Hearing: November 12, 2009 |
| COACTIV CAPITAL PARTNERS, INC.; | Time of Hearing: 1:30 p.m. |
| MANUFACTURERS AND TRADERS TRUST COMPANY; GREENWICH INSURANCE COMPANY; RUDOLPH D. TREBELS; LEE TREBELS; MARC LANGS; JAMES W. KILEY; and JAMES F. WHITE | |
| | |
| Defendants. | |
| _____/ | |

**OBJECTION OF FIRST CHICAGO BANK AND TRUST TO TRUSTEE'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
PURSUANT TO SECTIONS 105(a) AND 362(a)(3) OF THE BANKRUPTCY CODE AND
RULE 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1)
STAYING LITIGATION AND ATTEMPTS TO INCUR DEFENSE EXPENSES OR
OTHERWISE OBTAIN POSSESSION OR CONTROL OF THE PROCEEDS OF THE
D&O INSURANCE POLICY AND (2) SEEKING AN EXPEDITED BRIEFING
<u>SCHEDULE FOR HEARING ON PRELIMINARY INJUNCTION</u>**

First Chicago Bank and Trust ("<u>First Chicago</u>"), by and through its undersigned counsel, hereby submits its objection (the "<u>Objection</u>") to the Interim Trustee's Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a)(3) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (1) Staying

1

Litigation and Attempts to Incur Defense Expenses or otherwise Obtain Possession or Control of the Proceeds of the D&O Insurance Policy and (2) Seeking an Expedited Briefing Schedule for Hearing on Preliminary Injunction ("Motion").  In support of this Objection, First Chicago states as follows:

## INTRODUCTION

1.  This Court must decline to enjoin *First Chicago Bank and Trust v. Rudolph Trebels, et al.*, Case No. 09 CH 30153 (the "First Chicago Litigation") as requested by the Trustee in his Motion because: (i) this Court does not have "related to" jurisdiction to enjoin the First Chicago Litigation, (ii) the Trustee fails to meet the standard required for issuance of a preliminary injunction, and (iii) the proceeds of IFC Credit Corporation's ("IFC") directors and officers insurance policy are not property of the estate.

2.  The First Chicago Litigation involves fraud claims particularized to First Chicago against non-debtor individuals: Rudolph Trebels ("Trebels"), Lee Trebels and Marc Langs ("Langs" and collectively with Trebels and Lee Trebels, the "Defendants").  Those claims do not and cannot overlap with the claims allegedly being investigated by the Trustee and accordingly, as set forth in further detail below, this Court does not have "related to" jurisdiction to enjoin the First Chicago Litigation.  To be sure, First Chicago has assiduously avoided any attempt to pursue assets of the estate or claims belonging to the estate in the First Chicago Litigation, and the Trustee acknowledges the claims asserted are specific to First Chicago.

3.  Even if the Court had "related to" jurisdiction over the First Chicago Litigation—which it does not—the Trustee does not and cannot meet the required burden to obtain the issuance of a preliminary injunction because, among other things, he has little likelihood of success on the merits and no public interest would be served.

2

4. Moreover, the existence of a directors and officers insurance policy does not obviate the Trustee's burden to show this Court's "related to" jurisdiction over the matter to be enjoined and the elements to justify the imposition of an injunction, which the Trustee cannot meet on these facts.

## BACKGROUND

5. As alleged in the First Chicago Litigation complaint, a copy of which is attached hereto as Exhibit A, Trebels and Langs personally orchestrated a fraudulent scheme to enrich themselves individually by defrauding First Chicago. Specifically, the complaint alleges they fraudulently: (i) induced First Chicago to provide a $10 million loan; (ii) obtained loan advances from First Chicago by, among other things, misrepresenting the existence of collateral supposedly securing First Chicago's loan; (iii) double-pledged First Chicago's collateral to other creditors; (iv) diverted First Chicago loan advances for unauthorized and improper purposes, including using such advances to pay Trebels' wife, co-defendant Lee Trebels, a "salary" for no work, and to benefit themselves personally, including to obtain cars for their children, to purchase and make improvements to their personal real property, to maintain personal expense accounts at restaurants, to maintain personal country club memberships, and to purchase personal life insurance policies; and (v) induced First Chicago to lend into a Ponzi scheme at Wildwood Industries, Inc. ("Wildwood").

6. The claims asserted in the First Chicago Litigation are particularized to First Chicago and involve fraudulent acts by the Defendants directed toward First Chicago specifically. For instance, as alleged in the complaint:

> Trebels and Langs knew they were required to secure First Chicago's Leases in a separate locked file cabinet at IFC. Instead, they double-pledged and transferred possession of the Leases to West Suburban Bank and DZ Bank to obtain further financing from those banks.

3

> To conceal this double-pledging from First Chicago's auditors in March 2009, Trebels and Langs devised a plan to temporarily regain possession of the Leases. Langs and Trebels held a meeting in Trebels' office and instructed a member of IFC's treasury department to call IFC's contact at West Suburban Bank and claim that some of IFC's leases (those pledged to First Chicago) were being moved to the DZ Bank line. At no point did IFC intend to move the Leases. At IFC's request, West Suburban then returned the Leases to IFC based on this subterfuge. Trebels and Langs were notified once the Leases were received from West Suburban Bank. At the direction of Trebels and Langs, instead of moving the leases to the DZ Bank line, the Leases were placed in the First Chicago file cabinet prior to the First Chicago Spring 2009 audit and shown to First Chicago's auditor as if they had not been double pledged to West Suburban.
>
> After the First Chicago audit was complete, Langs, at the direction of Trebels, instructed a member of IFC's treasury department to call IFC's contact at West Suburban Bank and claim that DZ Bank had chosen not to fund the leases after all. IFC then returned the leases to West Suburban Bank.

(Exhibit A ¶¶ 20-22.)

7. To date, the Trustee has not initiated suit against Trebels, Langs, or their co-defendant Lee Trebels on behalf of IFC, nor has he even suggested that he would be empowered to assert the claims brought by First Chicago in the First Chicago Litigation. Nevertheless, the Trustee seeks to enjoin First Chicago from pursuing its remedies against the individuals who personally defrauded them in his Motion, which, for the reasons set forth below, must be denied.

8. At the initial hearing on the Motion, the Trustee withdrew his request for a temporary restraining order in exchange for First Chicago's agreement to refrain from taking any substantive action in the First Chicago Litigation until the earlier of (i) the entry of an order by this Court on the Motion or (ii) 30 days. First Chicago has kept its end of the bargain and has not taken any further substantive action in the First Chicago Litigation to date.

**OBJECTION**

9. This Court must decline to enjoin the First Chicago Litigation as requested by the Trustee in his Motion because (i) this Court does not have "related to" jurisdiction to enjoin the

4

First Chicago Litigation; (ii) the Trustee fails to meet the required standard for the issuance of a preliminary injunction; and (iii) the proceeds of IFC's directors and officers insurance policy are not property of the estate.

**A. This Court Does Not Have "Related To" Jurisdiction Over the First Chicago Litigation.**

10. The Trustee's Motion acknowledges that First Chicago's claims are not property of the bankruptcy estate, but nevertheless seeks to enjoin those claims pursuant to this Court's "related to" jurisdiction. *See* Motion at 8 (suggesting First Chicago's claims may be enjoined even if they are not property of the estate "as long as such claims are sufficiently related to the trustee's work on behalf of the estate").

11. The Seventh Circuit takes a restrictive view of "related to" jurisdiction: a case is related to a bankruptcy only when it "affects the amount of property for distribution or the allocation of property among creditors. *See In the Matter of FedPak Systems, Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1995). The Seventh Circuit has "interpreted 'related to' jurisdiction narrowly out of respect for Article III ... as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by state courts." *Id.* (citations and quotations omitted). Indeed, "common sense cautions against an open-ended interpretation of 'related to' statutory language in a universe where everything is related to everything else." *Id*

12. The principal authority in the Seventh Circuit on the scope of a bankruptcy court's "related to" jurisdiction to enjoin a separate state court proceeding is *In re Teknek, LLC*, 563 F.3d 639 (7th Cir. 2009).

13. The purpose and duty of the trustee is to gather the estate's assets for pro rata distribution to the estate's creditors. In aid of that duty, the trustee has the sole right and responsibility to bring claims on behalf of the estate and on behalf of creditors as so-called

5

"general" claims. *In re Teknek, LLC*, 563 F.3d at 645-646

14. Individual creditors retain the right to bring "personal" claims that do not implicate the trustee's purpose. The distinction between "general" and "personal" claims ensures that the trustee will be able to fulfill the purpose of the bankruptcy laws without allowing the bankruptcy jurisdiction to swallow claims only tangentially related to the debtor. *In re Teknek, LLC*, 563 F.3d at 645-646, *quoting Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998) ("The trustee, acting on behalf of the estate or the creditors as a whole, obviously may not roam around collecting whatever property suits her fancy. Her task instead is to recover and manage the 'property of the estate,' ...").

15. A trustee may maintain only a general claim. His right to bring a claim depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors. To determine whether an action accrues individually to a claimant or generally to a corporation, then, one must look to the injury for which relief is sought. The question presented is whether the injury is "peculiar and personal" to the claimant or general and common to the debtor corporation and creditors. *In re Teknek, LLC*, 563 F.3d at 646-47 (finding that alter-ego claims asserted against non-debtor were not estate property or related to debtor's bankruptcy case); *see also Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989) (holding that RICO claims were personal, and plaintiffs were therefore entitled to sue on their own, because their injuries were distinct from the injuries to creditors in general resulting from the diversion of corporate assets).

16. In the case *sub judice*, the Trustee has sought to enjoin First Chicago from pursuing claims that the Trustee acknowledges are personal and peculiar to First Chicago and thus belong exclusively to First Chicago. *See* Motion at 8. As alleged in the complaint, and

6

quoted above, Trebels and Langs conspired to defraud First Chicago in particular by developing an elaborate ruse to convince First Chicago that it was a fully secured creditor and to induce First Chicago to advance additional funds based on false pretenses. Their fraud was directed to First Chicago, not IFC, and the damage done is personal and peculiar to First Chicago. *See Fisher*, 155 F.3d at 883 (finding that "fraud inflicts a separate and distinct injury on its victims"). The claims asserted are not derivative of any claim the trustee might assert. Thus, there is no question that First Chicago's claims are not property of the estate.

17. For this reason, the case of *Peterson v. Ellerbrock Family Trust, LLC (In re Lancelot Investors Fund, L.P.)*, 408 B.R. 167 (Bankr. N.D. Ill. 2009), cited by the Trustee, is inapposite. In *Peterson*, the court found that the plaintiff investors' claims were "general claims that rightfully belong to the bankruptcy estate" because plaintiffs were "in the same shoes as other investors [318 of them] who relied upon the financial reports [prepared by debtor's auditor]" and suffered the same harm. 408 B.R. at 172. Here, the Trustee acknowledges that First Chicago has suffered a particularized harm and the claims it seeks to pursue are specific to it.

18. Nevertheless, in certain "***limited circumstances*** the trustee may temporarily block claims that are not property of the estate by petitioning the bankruptcy court to enjoin such claims, if they are sufficiently 'related to' claims on behalf of the estate." *In re Teknek, LLC*, 563 F.3d at 648 (citations omitted).

19. In *Teknek*, the Seventh Circuit noted that bankruptcy courts do not have such "related to" jurisdiction over "the more common case" where a creditor of a bankrupt files a claim against an insurer or guarantor of the bankrupt and is allowed to proceed because the suit is only nominally against the debtor as the only relief sought is against his insurer, guarantor, or

7

other similarly situated party. *In re Teknek, LLC*, 563 F.3d at 649. Like the alter-ego claims asserted against the non-debtor in *Teknek*, First Chicago's claims are against parties similarly situated to guarantors or insurers in that Trebels and Langs are non-parties to this bankruptcy who are independently liable to First Chicago.

20. The Seventh Circuit has also observed that a bankruptcy court's "related to" jurisdiction appears limited to circumstances "involv[ing] transfers from the debtor to a non-debtor control person or entity." *In re Teknek, LLC*, 563 F.3d at 649. In the instant case, First Chicago has asserted fraud claims against the former principals of IFC for acts unrelated to the transfer of assets from the debtor and independent of any claims the Trustee may (or may not) eventually choose to pursue. The basis of Trebels and Langs' liability to First Chicago is their direct role in a scheme to defraud First Chicago.

21. Additionally, the *Fisher* opinion, upon which the Trustee principally relies, acknowledges that the action to be enjoined and the trustee's claims must be the "result of the same acts, performed by the same individuals, as part of the same conspiracy" for the bankruptcy court to exercise its "related to" jurisdiction. 155 F.3d 882. In the instant case, the Trustee has not alleged and could not establish that Trebels and Langs' scheme to defraud First Chicago in any way related to the "same acts" or the "same conspiracy" that caused harm to IFC. If anything, their fraud on First Chicago may have improperly benefited IFC; and the complaint's allegations point to Trebels and Langs' particularized efforts to defraud First Chicago.

22. In sum, the only basis on which the Trustee might seek to enjoin First Chicago from pursuing its state law claims against non-debtor individuals is that he may seek to recover the same pool of assets from those individuals. As the Seventh Circuit has acknowledged, including most recently in *Teknek*, that is not a sufficient basis to invoke the bankruptcy court's

8

"related to" jurisdiction to enjoin a claim that is admittedly not property of the estate. *In re Teknek, LLC*, 563 F.3d at 649; *see also Matter of Deist Forest Products, Inc.*, 850 F.2d 340 (7th Cir. 1988) (finding bankruptcy court lacked subject-matter jurisdiction over an action by the debtor to enjoin a creditor's suit against bankrupt's guarantor and noting "[t]he limits on standing are vital in bankruptcy, where clouds of persons indirectly affected by the acts and entitlements of others may buzz about, delaying final resolution of cases").

**B. The Trustee Fails to Meet the Requirements for Issuance of a Preliminary Injunction.**

23. In addition, unlike in *Peterson*, because the Trustee has made no effort to articulate what claims, if any, he intends to assert against Trebels and Langs, he does not and cannot meet his burden of showing the "likelihood of success" necessary to obtain a preliminary injunction. *Fisher*, 155 F.3d at 882 (In order for a Court to issue an injunction, the trustee must show a likelihood of success on the merits and consider the public interest.) Likewise, the Trustee has not shown how it could be in the public interest to enjoin a creditor's efforts to pursue a fraud claim against non-debtor individuals, especially where, as here, the Trustee has not pursued those individuals on behalf of the debtor in this bankruptcy. To suggest otherwise in light of the Trustee's inaction is at best pure speculation.

24. Accordingly, the Court should deny the relief requested in the Motion because the Trustee fails to demonstrate a likelihood of success on the merits or harm to the public interest in permitting the First Chicago Litigation to continue.

**C. The Proceeds of the D&O Insurance Policy are Not Property of the Estate.**

25. As a second basis to support the injunctive relief requested, the Trustee takes liberties with the *marchFIRST, Inc. v. Megliola* opinion to suggest that proceeds of a directors and officers insurance policy is property of the estate and that this may serve as a basis to enjoin third-party suits. As an initial matter, the *marchFirst* court explicitly held that the proceeds of

9

the debtor's directors' and officers' liability policies were **not** property of the estate. *Id*. at 530. Moreover, the court noted,

> [e]ven defense funds are not the property of the insured until agreement by the insurer or a finding by the Court. When an insurer pays for the defense of an action against the directors and officers, it does so with a reservation of its rights. No one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment. Any property interest in the proceeds has not yet matured and may never mature.

*Id*.

26. The *marchFirst* court went on to find that the trustee must still establish the bankruptcy court's related to jurisdiction to enjoin a suit against a non-debtor. Though the *marchFIRST* court eventually found that the trustee had met that burden, it did so on the basis that the claims to be enjoined involved the same parties and same transactions and acts at issue in the trustee's previously filed adversary proceeding.

27. As set forth above, the Trustee does not and cannot meet his burden to show that this Court has "related to" jurisdiction or that he has a sufficient likelihood of success to justify a preliminary injunction. Accordingly, simply because First Chicago and the Trustee may ultimately seek recovery from, among other sources, a directors and officers insurance policy, that is not a sufficient basis to enjoin First Chicago's suit.[1]

28. Moreover, Greenwich has been very clear that it is paying defense costs of the defendants under a reservation of rights. Further, there has been no entry of a judgment

---

[1] First Chicago also notes that the Trustee erroneously suggests that if the relief it seeks is granted, "all the proceedings" may be consolidated into a single efficient action. That is not the case, as the Trustee has already acknowledged that the claims of First Chicago are specific to it and need not be brought before this Court. As to the conflict issue raised by the Trustee, it is irrelevant to the Trustee's burden to demonstrate the Court's "related to" jurisdiction and why an injunction should issue. The Trustee may appropriately raise any conflicts with Borst & Collins directly and may have separate claims against them in the event a conflict arises.

10

requiring Greenwich to issue payment to the defendants. Any property interest in the proceeds of the directors and officers insurance policy has not yet matured and may never do so.

29. Accordingly, the relief requested by the Trustee in his Motion should be denied because the insurance proceeds are not property of the estate and the use of such proceeds cannot be blocked by the automatic stay.

30. First Chicago incorporates by reference the arguments raised by CoActiv and M&T in their respective oppositions to the Trustees' Motion. First Chicago also incorporates by reference the arguments raised in its motion to dismiss in further support of these objections.

WHEREFORE, First Chicago respectfully requests that the Court deny the Trustee's request for a preliminary injunction, enter an order dismissing the Verified Adversary Complaint as to first Chicago, and grant First Chicago such additional relief as the Court deems just and proper.

[Continued on Following Page]

Dated: November 4, 2009            Respectfully submitted;

**FIRST CHICAGO BANK AND TRUST**

By: /s/ Paige E. Barr
     One of Its Attorneys

John P. Sieger (ARDC No. 6240033)
William J. Dorsey (ARDC No. 6271181)
Paige E. Barr (ARDC No. 6282474)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, does hereby certify that on November 4, 2009, she caused true and correct copies of the foregoing *Objection to Trustee's Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Sections 105(a) and 362(a)(3) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (1) Staying Litigation and Attempts to Incur Defense Expenses or otherwise Obtain Possession or Control of the Proceeds of the D&O Insurance Policy and (2) Seeking an Expedited Briefing Schedule for Hearing on Preliminary Injunction* to be served via electronic notice on the parties filing appearances or requesting notice through the Court's CM/ECF system.

/s/ Paige E. Barr

60762182