**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| IFC CREDIT CORPORATION | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 09 B 27094 |
| _____ | ) | |
| | ) | Hon. Jacqueline P. Cox |
| DAVID P. LEIBOWITZ, as Chapter 7 | ) | |
| Trustee for the estate of IFC Credit | ) | |
| Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. No. 09-01010 |
| v. | ) | |
| | ) | |
| FIRST CHICAGO BANK AND TRUST; | ) | |
| | ) | |
| COACTIVE CAPITAL PARTNERS, INC; | ) | |
| | ) | |
| MANUFACTURERS AND TRADERS | ) | |
| TRUST COMPANY; | ) | |
| | ) | |
| GREENWICH INSURANCE COMPANY; | ) | |
| | ) | |
| RUDOLPH D. TREBELS; LEE TREBELS; | ) | |
| MARC LANGS, | ) | |
| | ) | |
| JAMES W. KILEY; and JAMES F. WHITE | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**TRUSTEE'S OMNIBUS REPLY IN SUPPORT OF HIS MOTION FOR A
PRELIMINARY INJUNCTION PURSUANT TO SECTIONS 105(a) AND 362(a)(3) OF
THE BANKRUPTCY CODE AND RULE 7065 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE STAYING LITIGATION AND ATTEMPTS TO INCUR
DEFENSE EXPENSES OR OTHERWISE OBTAIN POSSESSION OR CONTROL OF
<u>THE PROCEEDS OF THE D&O INSURANCE POLICY</u>**

David P. Leibowitz, as Chapter 7 Trustee (the "Trustee"), for the Estate of IFC

Credit Corporation ("IFC" or the "Debtor") having commenced the above-captioned adversary

proceeding by filing a Complaint on October 20, 2009 (the "Complaint"), hereby submits this

Omnibus Reply in Support of His Motion for a Preliminary Injunction Pursuant To Sections

105(a) and 363(a)(3) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (I) Staying Litigation and Attempts to Incur Defense Expenses, Obtain Reimbursement of Defense Expenses, or Otherwise Obtain Possession or Control of the Proceeds of the D&O Insurance Policy (Docket No. 4) (the "Motion") to stay attempts by First Chicago Bank And Trust ("First Chicago"), CoActive Capital Partners, Inc. ("CoActive"); Manufacturers and Traders Trust Company, successor by merger to Court Square Leasing Corp. ("M&T"); Greenwich Insurance Company ("Greenwich"), Rudolph "Rudy" D. Trebels ("Trebels"), Marc Langs ("Langs"), Mrs. Lee Trebels, James W. Kiley ("Kiley") and James F. White ("White") (collectively, the "Defendants" and, collectively with the Trustee, the "Parties") from (a) obtaining possession or control of the proceeds of a $5 million D&O Policy,[1] including expenditures or advances of Defense Expenses; and (b) enjoining Litigation that is causing the continued accrual of certain defendants' Defense Expenses which are charged against the aggregate liability of the Policy. In further support of the Motion, the Trustee states as follows:

### Introduction

On October 20, 2009, the Trustee filed the Complaint for declaratory and injunctive Relief against certain Litigation plaintiffs, certain former officers and directors of IFC, and Greenwich that is now pending before this Court under the caption *IFC Credit Corporation v. First Chicago Bank & Trust, et al.* Simultaneously, the Trustee filed his Motion for a temporary restraining order and preliminary injunction. The Trustee seeks injunctive relief to stay litigation against IFC's former officers and directors. The Litigation plaintiffs' allegations against the non-debtor Litigation defendants are "related" to the estate. Mssrs. Trebels and Langs breached their fiduciary duties to the Debtor through improper financial transactions carried out under the guise

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them in the Complaint the Policy, the Motion, or the Trustee's Memorandum in Support of the Motion.

{7198 MOT A0245659.DOC}

2

of acting on behalf of the Debtor. The Trustee seeks to stay those claims in the Litigation that arise out of a common scheme and are, at their core, interrelated transactions. Furthermore, these officers and directors have requested the reimbursement of legal Defense Expenses from the Debtor and through IFC's D&O insurance policy and the insurer, Greenwich, has moved this Court for authorization to advance payment for those expenses. (*See* Notice of Motion and Motion for Relief from Stay as to Insurance Policy Proceeds, dated September 11, 2009 (Docket No. 193); and Response, dated October 16, 2009. (Docket No. 261.) (collectively, the "Greenwich Motion")) The proceeds paid toward legal Defense Expenses, however, are charged against the aggregate liability limits of the Policy, and would deplete the D&O insurance proceeds. The Trustee seeks to stay the Litigation and all payments towards Defense Expenses to affect an orderly administration and distribution of all estate property.

By the Parties' agreement and the Court's approval, this Court entered Stipulated and Agreed Orders scheduling the hearing on the preliminary injunction on October 23, 2009 (the "Agreed Orders"). (Docket Nos. 10-14.) Also pursuant to the Agreed Orders, the Trustee withdrew his request for relief in the form of the temporary restraining order, and the Defendants were given an opportunity to object to preliminary injunctive relief.

Defendants First Chicago, CoActiv, M&T and Greenwich each filed objections to the Trustee's Motion. (Docket Nos. 8, 17, 19, 20, 23.) (the "First Chicago Objection," the "CoActiv Objection," the "M&T Objection" and the "Greenwich Objection,"[2] collectively, the "Objections"). The Defendants' arguments can be summarized as threefold: 1) that the relief sought is not sufficiently "related to" the bankruptcy proceedings, as required by 11 U.S.C. §

---

[2] The Greenwich Objection incorporates by reference the arguments set forth in the Greenwich Motion. Greenwich has only objected to the Trustee's request for relief to the extent that the Trustee argues that the D&O Policy Proceeds are property of the estate.

{7198 MOT A0245659.DOC}

3

105(a) of the Bankruptcy Code; 2) that the Trustee has failed to meet the requirements for a preliminary injunction; and 3) that the proceeds of the Policy are not property of the estate, and therefore this Court does not have jurisdiction to impose the relief sought. Ironically, the Objectors' attempts to ratchet up litigation pressure on Mssrs. Trebels and Langs will serve to benefit these two officers by opening the Policy coffers to pay for the officers' legal defense -- at the expense of the unsecured creditors and the orderly administration of the estate. As set forth herein, however, the Defendants' arguments fail and the Trustee should be granted his injunctive relief to put an end to this race for the property of the estate.

## Argument

### I.  The Claims are Sufficiently Related to the Bankruptcy Action.

Even under a restrictive interpretation of "related to," this Court has jurisdiction to enjoin the pending litigation – and the very cases cited by the Objectors serve to strengthen the Trustee's arguments. A case is "related to" a bankruptcy when it "affects the amount of property for distribution or the allocation of property among creditors." *In re Fedpak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1995). "Related to" language "is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others . . . ." *In re Fedpak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1995) quoting *Zerland-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994) (*See* First Chicago Objection ¶ 11). Indeed, a Trustee represents the estate and "stand[s] in the shoes" of creditors with a "duty to marshal the debtor's property for the benefit of the estate," and has the "right to sue all parties for recovery of property under state law. He then distributes the amounts collected on a *pro rata* basis to all creditors in accord with the bankruptcy provisions." *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831

F.2d 1339, 1343 (7th Cir. 1987); citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941). The trustee has the sole responsibility to represent the estate by bringing actions on its behalf. *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1986). Per 11 U.S.C. § 541 and Seventh Circuit case law, the estate includes "any action a debtor corporation may have 'to recover damages for fiduciary misconduct, mismanagement, or neglect of duty' and the trustee succeeds to the right to bring such actions." *In re Teknek, LLC*, 563 F.3d 639, 646 (7th Cir. 2009); quoting *Koch*, 831 F.2d at 1343-44.

First Chicago, CoActiv and M&T explain in detail the allegedly unique factual events and circumstances that gave rise to the harms they each claim to have suffered in each of their business dealings with Trebels and Langs in an effort to show that their claims are "personal" and "independent" of any claim a hypothetical general creditor could bring. *See In re Teknek*, 563 F.3d at 644; (*see also* Chicago Obj. ¶¶ 16, 19-22; CoActiv Obj. 13 – 14; M&T Obj. 3-7.) While it is true that First Chicago, CoActiv and M&T each had individual business relationships and lending agreements with IFC and that the Objectors allege those individual agreements were breached by Trebels and Langs, the test for "related-to jurisdiction" in this context is satisfied where the claims in the Litigation arise out of the same underlying transactions and factual allegations. *See Fisher*, 155 F.3d at 883, where the test for "related-to jurisdiction" is satisfied when (a) the claims in the Litigation arise out of the same underlying transactions and factual allegations, (b) both actions seek recovery from the same pool of assets, and (c) there is an overlap of defendants named in the lawsuits.[3] This requirement was phrased in the *Teknek* case as to whether the claim was "personal" or not. In dicta in *Teknek*, the court noted that the fact that the claim at issue was a patent infringement claim (*i.e.* one that the Trustee did not have

---

[3] No Objector has argued that the "overlapping defendant" requirement in *Fisher* has not been met by the Trustee.

{7198 MOT A0245659.DOC}

standing to bring) did not necessarily make it a "personal" claim or otherwise fail to meet the first *Fisher* requirement:

> By such logic, all creditors' claims would be personal to the specific creditor: a supplier's claim for payment on supplies would be deemed personal because no other creditor could claim payment for the same supplies; an employee's back pay would be personal to the extent that no other employee could claim back pay for the employee's hours worked. If all such claims were "personal," no creditor would have to wait in line behind the bankruptcy trustee to assert her claims. With such segregation of claims, the bankruptcy system would collapse.

*In re Teknek*, 563 F.3d at 644. While the *Teknek* Court held that because the judgment claim was against a jointly and severally liable independent non-debtor corporate entity, the plaintiff could proceed with its action, the case is distinguishable from the case at hand for two important reasons.

First, the alleged wrongful acts in the *Teknek* case involved the looting of two separate corporate entities by the same persons – i.e. "separate acts, which caused separate injuries to two separate companies, only one of which is in bankruptcy." *Id.* at 649. A review of the Litigation Complaints reveals allegations of a pattern of behavior and a *modus operandi* that begins and ends with Trebels and Langs and the IFC corporate entity. *See Fisher*, 155 F.3d at 882, where the trustee's claims must be the "result of the same acts, performed by the same individuals, as part of the same conspiracy" for the bankruptcy court to exercise its "related to" jurisdiction. The Trustee has discovered during the initial phases of his investigation that there appear to be two patterns of behavior that could give rise to claims brought on behalf of the estate against certain of IFC's former officers and directors.

Indeed, reviewing the factual allegations in the opening paragraph of the First Chicago Complaint, it is apparent that the Trustee has the superior right to bring the breach of fiduciary duty claims that First Chicago asserts against Trebels and Langs for any IFC funds that were

improperly diverted for their own personal benefit.  (*See* First Chicago Complaint ¶ 1.)  In an investigation less than a week old, the Trustee has discovered that a substantial sum of IFC funds may have been improperly diverted for: 1) purchases of sports tickets for personal use; 2) payment of personal legal expenses; 3) country club and social club membership dues; 4) payments for automobiles used by officer family members; 5) payments to the Trebels-owned entity R&L Leasing that purportedly leased office equipment, furniture, and automobiles to the Debtor; 6) payment of personal expenses; and 7) payments for the employment of Trebel's family members who were not, in fact, employed by the Debtor nor performed any work for the Debtor.  Some of these factual allegations are not (yet) detailed in the First Chicago Complaint and all of these allegations could readily become part and parcel of the CoActiv and M&T Complaints.

The Trustee's investigation has also discovered evidence that the misused funds were obtained through a transactional scheme in which a number of the Debtor's creditors' funds were improperly used for the personal benefit of certain officers and directors or were improperly used to pay down the debt of other creditors.  Put another way, while each creditor (including, but not limited to, the Litigation plaintiffs) may have a separate claim arising from separate agreements, the acts of which these creditors complain are interrelated.  At this time, it would appear that certain individuals systematically engaged in the "robbing of Peter to pay Paul" – whereby the proceeds designated for one creditor were remitted to satisfy the next creditor, which kept all creditors in the dark as to the Debtor's deepening insolvency. These revelations serve to highlight the practical efficiencies and cost-savings inherent in allowing the Trustee time to complete his investigation -- before the discovery obligations and the Defense Expenses incurred

{7198 MOT A0245659.DOC}

to meet those obligations in the three separate civil litigations begin to erode the Policy Aggregate Liability Limit.

While each of the Objectors have argued that the injuries they suffer are caused by misconduct unique and exclusive to Trebels' and Langs' dealings with them, they have failed to mention that there are significant identical factual circumstances underlying their claims. The Objectors' Complaints, in and of themselves, demonstrate these factual circumstances. The First Chicago action against Trebels, Langs and Mrs. Lee Trebels alleges that Trebels and Langs misrepresented the existence of collateral, and diverted loan advances for improper purposes. First Chicago also alleges: "hold backs" of payments to vendors (First Chicago Complaint ¶ 14-16); and the diversion of lease termination fees for improper purposes (First Chicago Complaint ¶ 17-18). CoActiv also alleges that early lease termination fees were diverted for improper purposes (CoActiv Complaint ¶ 22 – 28); and that Trebels and Langs misrepresented certain servicing reports furnished to CoActiv (CoActiv Complaint ¶ 32-34). M&T also alleges that early lease termination fees were diverted for improper purposes (M&T Complaint ¶ 35-36) and that servicing reports were misrepresented (M&T Complaint ¶ 58 – 61).

Though the Trustee's investigation has only begun, it would appear that the misrepresentation of collateral, the improper diversion of early lease termination payments, and the holding back of vendor payments was part of the standard operating procedure at IFC for a significant period of time. The Trustee has discovered evidence that breaches of fiduciary duties owed by Trebels and Langs that facilitated these diversions were not a series of unique, separate acts but were part of an interrelated and expanding snowball of debt that continued to grow larger as the funding scheme continued. It appears likely that most, if not all, of the Debtor's lending creditors were ultimately negatively affected by these practices. Therefore, though the

lending agreements and business relationships with each of the Objectors may have been unique and "personal" to them, it is likely that the same acts of misconduct on the part of Trebels and Langs (and potentially other officers and employees of IFC) underlie the causes of action being asserted by nearly every significant creditor in this Case. Were the Objectors allowed to continue to pursue their claims, it would be to the detriment of all other similarly situated unsecured creditors who failed to join the race to file their lawsuits. This run on the property of the estate is impermissible and violates basic fundamental precepts of American bankruptcy law.

Second, *Teknek* does not address the complication of D&O insurance policies and the depletion of policy proceeds in connection with non-debtor claims. Furthermore, Trebels and Langs have made demands upon the Debtor to indemnify them for the Defense Expenses incurred or to be incurred in the third-party litigation. The Trustee has determined that the underlying transactions and factual allegations against the Trebels Defendants in both his potential filing and in the Litigation would be substantially similar. The Trustee has also preliminarily determined that the claims in both the contemplated Trustee-filed lawsuit and the Litigation could potentially be satisfied from the Policy proceeds and the personal assets of certain Insured Persons. At this point in time, the Trustee believes that the Defense Expenses, IFC's aggregate liability, and the Litigation defendants' aggregate liabilities may well exceed the Policy Coverage Amount. Any shortfall of these Policy proceeds would detrimentally affect the administration of the estate. The D&O policy proceeds are a pool of assets that both the Trustee and the Litigation Plaintiffs seek recovery from – thus meeting the second requirement of Fisher and providing a basis on which to grant the relief the Trustee seeks. *See Fisher,* 155 F.3d at 883.

II.     **The Trustee has Met the Requirements for Injunctive Relief.**

{7198 MOT A0245659.DOC}

9

The Objectors make much of the fact that the Trustee has not yet determined whether or on what grounds he will file suit on behalf of the Debtor's estate against certain officers and directors of IFC or former officers and directors of IFC. Therefore, their argument continues, the Trustee cannot substantiate any harm to the estate (CoActiv Obj. 16-17; M&T Obj. 9), demonstrate a likelihood of success on the merits (CoActive Obj. p. 15; First Chicago Obj. ¶ 23-24), or demonstrate how the injunctive relief is in the public interest (First Chicago Obj. ¶ 23-24).

Here is the harm: if the Objectors are allowed to continue pursuing their three separate actions predicated on the interrelated underlying transactions adversely impacting the Debtor's creditors generally, Trebels and Langs will begin incurring legal Defense Expenses to defend themselves in the Litigation. The D&O Policy's $5 million dollar Policy Coverage Amount includes reasonable legal fees and expenses incurred in the defense of those claims.

> Defense Expenses incurred by the insurer or the insured in defense of a Claim will be part of and not in addition to the Limits of Liability, and *payment of Defense Expenses by the insurer will reduce and may exhaust all applicable limits of Liability*.

(Policy, General Terms And Conditions, Section III. A. (2) (emphasis added).) Far from wild speculation, it is a safe assumption that, were the Litigation permitted to continue, the Objectors would prosecute their claims aggressively. Every dollar billed by Trebels' and Langs' attorneys to answer the Objectors' complaints and comply with the Objectors' discovery requests will be one less dollar available from the finite Policy proceeds. Furthermore, denying the Trustee the relief he seeks will open the floodgates of litigation -- nearly each and every lending creditor would be forced to file suits in order to protect those claims that might be covered by the D&O insurance proceeds.

The Objectors' counter-argument is that the D&O Policy proceeds are not a part of the estate, and therefore any depletion of the proceeds does not fall under the protection of the automatic stay. The Objectors would appear to agree, however, that the D&O Policy is part of the Debtor's estate. (See CoActiv Obj. 6; M&T Obj. 2-3; *In re Marchfirst* (*Maxwell v. Megolia*), 288 B.R. 527 (Bankr. N.D. Ill. 2002) ("*MarchFirst I*"), aff'd *Megolia v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003) ("*MarchFirst II*").) The Objectors' position begs the following question:

What is the value is a D&O insurance policy that has no proceeds to distribute?

The Trustee asserts that such a policy would have no value. Hence, the difference between the insurance policy and its proceeds is one without distinction. It is uniquely in this Court's power to enable the Trustee, on behalf of all of the creditors, to avoid this question and allow him to marshal the Debtor's property for the benefit of all those creditors. This Court need not hold that the Policy proceeds are property of the estate for purposes of issuing preliminary injunctive relief, as it is clear that the depletion and potential exhaustion of the D&O Policy liability limit reduces the value of the Policy to the Debtor's estate. Because of this reduction in value, the courts in both *MarchFirst I* and *MarchFirst II*, and the court in *Peterson v. Ellerbrock Family Trust* (*In re Lancelot Investor's Fund L.P.*), 408 B.R. 167 (N.D. Ill. 2009) stopped the clock to allow the Trustee to assert claims on behalf of all of the unsecured creditors.

M&T argues that the Seventh Circuit applies the incorrect standard in determining whether a preliminary injunction should issue under these circumstances. (M&T Obj. 8.) This Court is bound by Seventh Circuit precedent in *Fisher*, where there is no need to demonstrate an inadequate remedy at law or irreparable harm. 155 F.3d at 882; *see also MarchFirst II*, 288 B.R. at 530.

Finally, CoActiv has surmised that the Trustee's potential claims may be barred by the *in pari delicto* doctrine and, therefore, cannot show a "likelihood of success on the merits." *In pari delicto* is intended for situations in which the victim is a participant in the misconduct giving rise to his claim. *In re Edgewater Medical Center*, 332 B.R. 166, 176 (Bankr. N.D. Ill. 2005). "The *in pari delicto* defense exists only because wrongdoers must not be permitted to profit from their wrongdoing." *Id.* at 178. Furthermore, the defense "loses its sting" once the person who is in *in pari delicto* is removed. *Id*. at 177. Any causes of action for breach of fiduciary duty will be brought by the Trustee pursuant to Illinois law. In Illinois, the doctrine is not applicable as the Trustee will not be considered a "wrongdoer." *See McRaith v. BDO Seidman, LLP,* 391 Ill. App. 3d 565, 595 (Ill. App. Ct. 1st Dist. 2009). In *McRaith*, an auditing firm raised the *in pari delicto* defense against a statutory, court-appointed liquidator who brought claims of negligence and breach of contract in connection with that firm's public accounting and auditing services. *Id*. at 566. The *McRaith* court held that the defense could not be asserted because the insurance "[l]iquidator, by statutory definition, is not the wrongdoer; rather, he serves to protect the insurance industry and the public interest by ensuring the victims of the misconduct can recover monies entitled to them." *Id*. at 595. The court went on to state that "[t]o equate the [l]iquidator with [the wrongdoing officer] under *in pari delicto* is illogical and unavailing." *Id*. *See also Albers v. Continental Illinois Bank & Trust Co.,* 296 Ill.App. 596, 599 (1938) (where the Illinois appellate court held that the doctrine of *in pari delicto* was inapplicable against a bank receiver, who, similar to a liquidator, is an administrative officer of the state with rights, powers and duties conferred by statute.)

CoActiv cites to *Mosier v. Callister, Nebeker & McCullough,* for the proposition that a trustee may be barred from bringing claims against third persons who participated in the

misconduct. 546 F.3d 1271, 1276 (10th Cir. 2008). *Mosier* is distinguishable from the case at hand, in that the Trustee in Mosier attempted to bring an action against a law firm who briefly represented a Ponzi scheme operating debtor. The *Mosier* court held that there was no evidence that the firm made fraudulent representations, participated in any felony conduct or counseled the debtor to continue operating while insolvent. *Id*. The *Mosier* court went on to note that the debtor corporate officers and the entire board of directors of the corporation were engaged in or on notice of the fact that the business operations were illegal. *Id*. at 1276 – 1277. In the case at hand, the Trustee, on the behalf of the estate and the unsecured creditors may potentially bring actions against those individual persons who engaged in the fraudulent conduct and enriched themselves under the guise of acting on behalf of IFC Credit Corporation.

### III.     The D&O Proceeds are the Property of the Estate.

Finally, the Objectors argue that the D&O Policy proceeds are not property of the estate and, therefore, not subject to the automatic stay under 11 U.S.C. § 362(a)(3). The Trustee has fully briefed this issue in his Objection to Motion of Greenwich Insurance Company for Relief from the Automatic Stay, dated October 6, 2009 (Docket No. 251 ) (the "Trustee's Objection"). The Trustee incorporates the arguments set forth in the Trustee's Objection herein by reference. It should also be noted that, as was the case in *MarchFirst I*, *MarchFirst II*, and *In re Lancelot*, this Court need not hold that the D&O Policy Proceeds are property of the estate in order to grant the relief sought by the Trustee. The Trustee, however, also takes this opportunity to address additional arguments the Objectors make. CoActiv argues the rationale set forth in the *Louisiana World Exposition, Inc. v. Federal Insurance Co.* line of cases that the proceeds of a D&O policy are property of the beneficiary directors and officers because the D&O policy safeguards director and officer interests. (*In re Louisiana World Exposition*), 832 F.2d 1391, 1401 (5th Cir. 1987).

The Trustee returns to the fact that "[t]here is no question that [D&O] policies themselves are estate property." *Marchfirst I,* 288 B.R. at 529.

Unlike other liability policies that insure a company against loss if it is held liable, director and officer insurance policies are purchased by corporations to assure their directors and officers that if the directors and officers are sued for their acts *in connection with the discharge of their fiduciary duties* they will have access to the policy proceeds to pay defense expenses and judgments obtained against them for their wrongful acts. It has been recognized that without access to director and officer liability policy proceeds it may be impossible for debtors to retain independent directors and officers through the reorganization process. *See e.g. In re Adelphia Comm. Corp.*, 285 B.R. 580, vacated and remanded, 2003 WL 22005944 (S.D. N.Y. 2003). The Trustee has determined that it is critical the proceeds be safeguarded until such a time as a full investigation can be completed and his claims brought on behalf of the estate. Based on the information available, it appears that the conduct for which Trebels and Langs seek defense – at the expense of the Debtor and its creditors – was *not* undertaken consistent with their fiduciary obligations to the Debtor. It is unknown whether additional officers or directors or former officers or directors will request indemnification and the advancement of Defense Expenses in connection with their actions. Until a full investigation can be made to understand the depth of the potential claims and causes of action that might impact the Policy, the Policy proceeds, and the Debtor's estates, the Trustee asserts that funds should not be flowing out to the benefit of Trebels and Langs.[4]

Finally, M&T suggests that, because the Trustee requested tail coverage that extended the date of the Policy, M&T should not be prejudiced by the provisions of the Policy relating to

---

[4] This is particularly true where there has been no undertaking by either Trebels or Langs to ensure payment of the Defense Expenses in the event coverage is ultimately denied.

{7198 MOT A0245659.DOC}

Defense Expenses and the deduction of those expenses from the Liability Limit. On September 3, 2009, the Bankruptcy Court authorized, and the Trustee funded the premium for tail coverage on the Policy pursuant to the Interim Order (I) Authorizing Use of Cash Collateral and (II) Scheduling and Approving the Form and Method of Notice of the Hearing on the Trustee's Motion for the Entry of Final Order to Use Cash Collateral. (Docket No. 178.) (the "Cash Collateral Order"). Respectfully, the time for objecting to the Trustee's Motion to grant the relief requested in the Cash Collateral Order has passed, and the Trustee's business judgment cannot be re-litigated in the pending Motion for a preliminary injunction.

## Conclusion

For the reasons set forth herein, Plaintiff David P. Leibowitz, solely in his capacity as the Chapter 7 Trustee for the Estate of IFC Credit Corporation, requests that this Court grant the relief set forth in his Memorandum in Support of His Motion for a Preliminary Injunction Pursuant To Sections 105(a) and 363(a)(3) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (I) Staying Litigation and Attempts to Incur Defense Expenses or Otherwise Obtain Possession or Control of the Proceeds of the D&O Insurance Policy.

> Respectfully submitted,
> David P. Leibowitz, solely in his
> capacity as the Chapter 7 Trustee, for
> the Estate of IFC Credit Corporation

Dated: November 10, 2009                By:  */s/ John Guzzardo*
                                              One of his attorneys

Ira Bodenstein
David B. Goodman
John Guzzardo
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 276-1333 phone
(312) 275-0569 fax

{7198 MOT A0245659.DOC}

**CERTIFICATE OF SERVICE**

I, John Guzzardo, an attorney, hereby certify that on November 10, 2009, I electronically filed the forgoing TRUSTEE'S OMNIBUS REPLY IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION PURSUANT TO SECTIONS 105(a) AND 362(a)(3) OF THE BANKRUPTCY CODE AND RULE 7065 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE STAYING LITIGATION AND ATTEMPTS TO INCUR DEFENSE EXPENSES OR OTHERWISE OBTAIN POSSESSION OR CONTROL OF THE PROCEEDS OF THE D&O INSURANCE POLICY, with the United States Bankruptcy Court for the Northern District of Illinois Eastern Division using the CM / ECF System, and by e-mail to the following persons set forth in the attached Service List.

By: */s/ John Guzzardo*

**SERVICE LIST**

Marc Langs
mlangs@sbcglobal.net

John B. Simon
Christine L. Childers
Vincent E. Lazar
Jenner & Block LLP
330 N. Wabash Ave
Chicago, IL 60611
jsimon@jenner.com
cchilders@jenner.com
vlazar@jenner.com
*Counsel for Rudolph D. Trebels*

Sarah H. Doran
John Duchelle
Troutman Sanders LLP
55 W. Monroe St.
Suite 3000
Chicago, IL 60603
(312) 759-1920
sara.doran@troutmansanders.com
john.duchelle@troutmansanders.com
*Counsel for Greenwich Insurance Company*

Matthew R. Carter
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
mcarter@winston.com
*Counsel for James W. Kiley and James F. White*

John P. Sieger
Paige E. Barr
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661
john.sieger@kattenlaw.com
paige.barr@kattenlaw.com
*Counsel for First Chicago Bank & Trust*

Peter J. Deeb
Frank G. Murphy
1601 Market St., Suite 2600
Philadelphia, PA 19103
pdeeb@dpattorneys.com
fmurphy@pdattorneys.com
*Counsel for CoActiv Capital Partners, Inc.*

Deidre M. Richards
Steven Levin
Lamm Rubenstone LLC
3600 Horizon Blvd., Suite 200
Trevose, PA 19053
drichards@lammrubenstone.com
slevin@lammrubenstone.com
*Counsel for Manufacturers and Traders Trust Company*

Pia N. Thompson
Kovitz Shifrin Nesbit
750 W. Lake Cook Rd., Ste. 350
Buffalo Grove, IL 60089-2069
pthompson@ksn.law.com
*Counsel for Manufacturers and Traders Trust Company*

David P. Vallas
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Dr., Ste. 3000
Chicago, IL 60606
vallas@wildman.com
*Counsel for CoActiv Capital Partners, Inc.*

{7198 MOT A0245659.DOC}